**In re GILLETTE ASSOCIATES, LTD.,**
**Charles Ervin Stein, Debtors.**

**Bankruptcy Nos. B87–00769–Y,**
**B87–00770–Y.**

United States Bankruptcy Court,
N.D. Ohio.

June 7, 1989.

Michael A. Gallo, Youngstown, Ohio, for debtors.

Frederick S. Coombs, III, Youngstown, Ohio, for Official Bondholders Committee.

Joseph C. Winner, Columbus, Ohio, for Bancohio Nat. Bank, Indenture Trustee.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

### INTRODUCTION

Two issues are before the Court for resolution. The first involves the Proof of Claim filed by BANCOHIO and the second is the confirmation of a plan of reorganization of the Debtors.

GILLETTE ASSOCIATES, LTD., ("GILLETTE") and CHARLES ERVIN STEIN ("STEIN") (collectively "Debtors") filed petitions for reorganization under Chapter 11

of Title 11 in 1987. When Debtors failed to file a plan within the exclusivity period, BANCOHIO NATIONAL BANK ("BANCOHIO") filed a plan providing for liquidation of Debtors. Debtors later filed a plan of reorganization. The Debtors' Plan consists of the following writings:

1. First Amended Plan of Reorganization filed December 16, 1988.

2. Modification of Plan filed February 22, 1989.

3. Modification of Plan filed March 31, 1989.

BANCOHIO's Plan is comprised of two (2) documents:

1. Second Amended Plan filed November 23, 1988.

2. Post–Balloting Modification of Second Amended Plan, filed February 23, 1989.

A joint confirmation hearing was held by the Court on February 24, 1989. Post-hearing memoranda have been submitted by both Plan proponents and THE OFFICIAL BOND HOLDERS COMMITTEE.

This is a core proceeding pursuant to 28 U.S.C. Sec. 157(b)(2)(A), (B), (K), and (L).

### BACKGROUND

In October 1984, Trumbull County, Ohio, issued industrial revenue bonds to finance the acquisition of land and construction of a 100–bed intermediate nursing care nursing home facility located at 3310 Elm Road, NE, Warren, Ohio 44484 ("GILLETTE ASSOCIATES NURSING HOME PROJECT", or "PROJECT"). TONN & BLANK, INC., was the prime contractor for the project. BANCOHIO is the indenture trustee for the holders of Two Million, Six Hundred Ten Thousand & 00/100 Dollars ($2,610,-000.00) of the Trumbull County, Ohio industrial development first mortgage revenue bonds, 13¾ percent, Series 1984 ("Bonds").

GILLETTE is an Ohio limited partnership. STEIN is the sole general partner of GILLETTE. KENNETH R. EVERSOLE ("EVERSOLE") was the sole limited part-

ner of GILLETTE, but his interests were purchased pre-Petition by STEIN.

A loan agreement was executed between Trumbull County and GILLETTE. GILLETTE also executed a promissory note, which was secured by an open-end mortgage and security agreement. A Trust Indenture was executed between Trumbull County and BANCOHIO pursuant to which, *inter alia*, Trumbull County assigned the loan agreement, note and open-end mortgage and security agreement to BANCOHIO for the benefit of the bond holders. The bond issue closed on October 31, 1984, and construction commenced.

Under the terms of the note and loan agreement, GILLETTE was obliged to make monthly payments to BANCOHIO for the benefit of the bond holders. Between October 1984 and October 1987, GILLETTE was only obliged to pay the interest accruing on outstanding bonds and was entitled to a credit for earnings on the bond monies held by BANCOHIO pursuant to the loan agreement and Trust Indenture. The Trust Indenture required BANCOHIO to deposit, from proceeds of bond sales, the sum of Two Hundred Ninety–Five Thousand & 00/100 Dollar ($295,000.00) into a Debt Service Reserve Fund. Funds in the Debt Service Reserve Fund were restricted to use "to prevent any default in the payment of principal, of interest, and premium, if any, on the bonds, if monies in the Bond Fund are insufficient to pay the same as they become due." Trust Indenture, Sec. 4.04(b), p. 17–18. GILLETTE met its first interest payment, due on November 25, 1985, but failed to meet additional payments. BANCOHIO made withdrawals from the Debt Service Reserve Fund to pay interest due to bond holders on April 1, 1986 and October 1, 1986.[1] The Trust Indenture provided for the replenishment of the Debt Service Reserve Fund in the following manner:

> Pursuant to the Loan Agreement [Sec. 2.1(c)(1), p. 13] in the event that monies in the Debt Service Reserve Fund are used for any purpose authorized by this Indenture (other than payment at maturity), Debt Service Reserve deposits shall be made by depositing into the Debt Service Reserve Fund on the twenty-fifth day of each of the next succeeding twelve months after such withdrawal one-twelfth ($\frac{1}{12}$) of the amount of such withdrawal (after allowance for investment earnings).

(Trust Indenture Sec. 4.04(b), p. 18). BANCOHIO notified GILLETTE of its default. GILLETTE failed to cure, and BANCOHIO exercised its option to accelerate future payments.

TONN & BLANK ceased construction activity in December, 1985. Mechanic's liens were filed. Tonn and Blank's lien was for Five Hundred Twenty–Two Thousand, Eight Hundred Forty–Three & 70/100 Dollars ($522,843.70). Ten subcontractors of Tonn & Blank filed liens totalling Four Hundred Thirty Thousand, One Hundred Seventy–Four & 98/100 Dollars ($430,174.98). The nursing home was only partially completed and without patients.

On March 18, 1986, TONN & BLANK filed a complaint in The United States District Court for the Northern District of Ohio against GILLETTE, EVERSOLE, STEIN, BANCOHIO, and others, claiming liens on the project. (*Tonn & Blank, Inc., v. Gillette Assoc.*, Case C86–1041–Y). BANCOHIO filed its Answer, Counterclaim and Crossclaims seeking, among other things:

1. A joint money judgment against GILLETTE and STEIN in the principal sum of Two Million, Six Hundred Ten Thousand Dollars ($2,610,000.00), plus interest; and

2. Foreclosure of the mortgage and sale of the project.

On April 10, 1987, the District Court entered summary judgment against STEIN, EVERSOLE and GILLETTE, jointly and severally, in favor of TONN & BLANK in the principal amount of Seven Hundred Thousand Dollars ($700,000.00). None of the parties appealed the judgment. On April 20, 1987, the District Court entered

---

1. The two payments totalled $353,562.00. The payments reduced the Debt Service Reserve Fund to approximately Thirty–Three Thousand & 00/100 Dollars ($33,000.00).

summary judgment in favor of BANC-OHIO against GILLETTE and STEIN, jointly, in the amount of Two Million, Five Hundred Forty–Five Thousand, One Hundred Seventy–One & 62/100 Dollars ($2,545,171.62), plus interest from August 15, 1986.

Shortly after commencement of the District Court suit, subcontractors of TONN & BLANK, filed suits in Trumbull County Court of Common Pleas. (*Polivka Paving v. Tonn & Blank, Inc.*, Case 86–CV–398); *Firefoe v. Tonn & Blank, Inc.*, Case 86–CV–1390).[2]

Among STEIN's personal assets was a partnership interest in POST LAND COMPANY. The sum of One Million, One Hundred Fifty–Eight Thousand, Four Hundred Ninety–Five & 59/100 Dollars ($1,158,-495.59) was about to be disbursed to STEIN from POST LAND COMPANY from the sale of another nursing home facility. On May 5, 1987, the Trumbull County Court of Common Pleas issued a Charging Order in favor of BANCOHIO making STEIN's interest in the POST LAND COMPANY subject to the judgment in favor of BANCOHIO.[3] Subsequently, TONN & BLANK and CORTLAND SAVINGS & BANKING COMPANY, another creditor of STEIN, challenged BANC-OHIO's attachment of STEIN's partnership interest. The Common Pleas Court ordered that the POST LAND COMPANY monies be deposited with the Clerk of the Court until the priorities were determined. On June 5, 1987, the Common Pleas Court entered an Order directing that the entire amount of money deposited with the Court be disbursed to BANCOHIO. On June 10, 1987, TONN & BLANK filed a Notice of Appeal of the decision and a Motion for a stay of the judgment pending appeal. The Court of Appeals granted TONN & BLANK's stay of the judgment pending appeal.[4] On June 19, 1987, both GILLETTE and STEIN filed Chapter 11 Petitions in the United States Bankruptcy Court for the Northern District of Ohio.

At the time of the Petition filings, Debtor had managed to complete construction of the project and had 17 patients.

After filing the Petitions for Reorganization under Chapter 11, STEIN sought Bankruptcy Court authority to use a portion of the POST LAND COMPANY funds on deposit with the Trumbull County Court to assist in Debtors' reorganizational efforts. On June 23, 1987, we determined that BANCOHIO's claim was adequately secured by the GILLETTE nursing home and ordered the POST LAND COMPANY funds transferred to a debtor-in-possession interest-bearing account at BANK ONE OF EASTERN OHIO, N.A. ("BANK ONE"). Further, the STEIN estate was authorized to loan up to Eighty Thousand & 00/100 Dollars ($80,000.00) of the POST LAND COMPANY funds to the GILLETTE estate for operating expenses of the nursing home. Subsequently, STEIN was also permitted to use portions of the POST LAND COMPANY funds for personal living expenses. After establishment of the BANK ONE account, additional POST LAND COMPANY funds amounting to approximately Two Hundred Fifty Thousand & 00/100 Dollars ($250,000.00) were deposited to the account.

In September 1987, GILLETTE and STEIN filed with this Court an Application to borrow money and compromise controversy. The Application proposed a settlement of the claim of TONN & BLANK, and included the releases of all subcontractor claims and liens against the GILLETTE project. On November 2, 1987, this Court approved the Application under the following conditions:

1. STEIN was authorized to lend to GILLETTE from the POST LAND COMPANY funds, and GILLETTE was authorized to borrow from STEIN, the sum of Five Hundred Ninety–Five Thousand & 00/100 Dollars ($595,000.00). STEIN was

---

**2.** Both cases were removed to this Court.

**3.** Case Number JLD No. 56, Page 300, Trumbull County Court of Common Pleas.

**4.** The appeals were removed to the Bankruptcy Court with consent of all parties on August 6, 1987.

granted an administrative expense priority for this amount.

2. STEIN was directed to pay counsel for TONN & BLANK, as escrow agent, the sum of Five Hundred Ninety–Five Thousand & 00/100 Dollars ($595,000.00), which constituted full satisfaction of all claims between TONN & BLANK and the Debtors. (A mutual release was executed by both TONN & BLANK and the Debtors).

3. TONN & BLANK was required to release its liens on all property of the Debtors and cause the discharge of liens of all subcontractors of TONN & BLANK against the Debtors and indemnify the Debtors against any judgment or cause regarding any subcontractor lien which was not discharged.

4. Upon payment of the sum of Five Hundred Ninety–Five Thousand & 00/100 Dollars ($595,000.00), TONN & BLANK was required to assign to the Debtors all of its rights to all claims which are or may be owed or claimed to be owed to TONN & BLANK by STEIN, EVERSOLE and/or GILLETTE.

At the present time, construction of the project is complete. The nursing home is filled to capacity and has a waiting list of prospective patients. GILLETTE has accumulated at least Six Hundred Fifty Thousand & 00/100 Dollars ($650,000.00) over and above its operating costs.

### THE PLANS

A. *Plan of BancOhio.* BANCOHIO's "reorganization" plan is actually a plan to liquidate both GILLETTE and STEIN. Confirmation of the BANCOHIO Plan would approve a sale of the GILLETTE ASSOCIATES nursing home project to WARREN GENERAL HEALTH CARE PROPERTIES, an Ohio general partnership ("WARREN GENERAL") for Three Million & 00/100 Dollars ($3,000,000.00).[5] To implement the BANCOHIO Plan, the Court would require Debtors to deliver to WARREN GENERAL:

1. Full possession of the project land, buildings, and structures and fixtures with good and marketable title.

2. All tangible personal property used by Debtors in the operation of the project, including supplies and inventory, with good and marketable title.

3. Authority to operate under the Certificate of Need granted to Debtors by the State of Ohio Health Planning Development Agency.

4. Debtors' consent to the transfer and surrender of Debtors' Medicaid provider number to WARREN GENERAL.

5. Debtors' consent to WARREN GENERAL (and/or its lessee) to operate under Debtors' license to operate as a 100–bed intermediate care nursing home.

6. All other permits, licenses, franchises, consents, and other authorizations necessary for operation of the project.

7. Such service and maintenance and executory contracts as WARREN GENERAL may elect.

8. A guarantee that Debtors will be responsible for correcting any deficiencies resulting from a change of ownership inspection by the State of Ohio.

It is unclear whether applicable Ohio law requires the personal consent of the permit holder to insure continued validity of the assigned or transferred licenses and permits. That STEIN would voluntarily consent to his own involuntary liquidation is questionable. If he would not, the use of contempt powers to force those acts, espe-

---

5. WARREN GENERAL is an Ohio general partnership formed by Warren General Health Care Enterprises, Inc., and Mr. Robert VanSickle. Warren General Health Care Enterprises, Inc., is an affiliate of Warren General Hospital. Mr. VanSickle is a principal of AMCARE HEALTH, INC., a creditor in these Chapter 11 proceedings. BANCOHIO's Disclosure Statement represented that another company in which Mr. VanSickle has an interest, Vanesco, Inc., will, in all probability, manage the GILLETTE facility for WARREN GENERAL.

cially with the factual background here found, would seem at the very least to be harsh, Sec. 1142 notwithstanding. BANC-OHIO projected sources of funding for its Plan as follows: [6]

| SOURCE | AMOUNT |
|---|---|
| Net proceeds from sale of GIL-LETTE nursing home facility to WARREN GENERAL | $ 390,000.00[7] |
| Cash from GILLETTE operations after payment of post-Petition operating expenses | 680,000.00[8] |
| Remainder of STEIN's POST LAND COMPANY funds | 813,800.00[9] |
| Sale of Horses owned by STEIN | 49,000.00 |
| Veres Judgment | 155,000.00 |
| TOTAL FUNDS AVAILABLE | $2,087,800.00[10] |

The BANCOHIO Plan projects disbursement of Two Million, Six Hundred Ten Thousand Dollars ($2,610,000.00) as bond principal and other disbursements of One Million, Nine Hundred Ninety–Six Thousand, Six & 97/100 Dollars ($1,996,006.97), plus an unknown amount to satisfy administrative expenses. The BANCOHIO Plan proposes to pay 100 percent (100%) on all claims, including the following amounts to itself:

1. Principal and interest owing to BANCOHIO as indenture trustee for the bond holders as of June 19, 1987 in the amount of Two Million, Eight Hundred Sixty–Three Thousand, Three Hundred Eighty–Six & 96/100 Dollars ($2,863,386.96).[11]

2. Post–Petition interest of Five Hundred Twenty–One Thousand, Five Hundred Five & 72/100 Dollars ($521,505.72) to bond holders.[12]

3. Fees and expenses of the indenture trustee as of June 19, 1987, totalling Thirty–Three Thousand, Seven Hundred Forty–Six & 33/100 Dollars ($33,746.33).[13]

4. Fees and expenses of the attorney for the indenture trustee as of June 19, 1987, of One Hundred Thousand, Eighty & 29/100 Dollars ($100,-080.29).[14]

5. Expenses incurred in United States District Court Case C86–1041–Y totalling Thirty Thousand, Three Hundred Ninety–Seven & 28/100 Dollars ($30,397.28).[15]

6. A projected and estimated administrative claim of One Hundred Fifteen Thousand & 00/100 Dollars ($115,-000.00).[16]

B. *Plan of Debtors.* Debtors' Plan also provides for a 100 percent payment to all allowed claims. Debtors set forth the source of funding for their Plan as follows: [17]

---

6. 11/23/88 Disclosure Statement accompanying the Second Amended Combined Plan of Reorganization submitted by BANCOHIO.

7. This sum is determined by subtracting the assumed bond debt from the total purchase price. ($3,000,000.00 – $2,610,000.00 = $390,000.00).

8. Projected from August 31, 1988 through November 30, 1988 at $50,090.00 per month.

9. Projected from March 31, 1988 to November 30, 1988; balance on March 31, 1988 was $782,-000.00; additional interest projected at 6.1 percent (6.1%) per annum.

10. Any additional sums needed may be obtained, BANCOHIO explains, by liquidating STEIN's real estate interests. The Plan makes no acknowledgement of the approximately $33,-000.00 or accrued interest which BANCOHIO is holding in the Debt Service Reserve Fund.

11. *See* Proof of Claim of BANCOHIO filed 09/28/87, p. 1.

12. *See* 11/23/88 Disclosure Statement, p. 28 (amount to a projected closing date of 11/30/88).

13. *See* Proof of Claim of BANCOHIO filed 09/28/87, p. 2.

14. Id.

15. Id.

16. *See* Disclosure Statement of 11/23/89, p. 29; BANCOHIO has submitted to the Court a statement for professional fee charges through December 30, 1988, in the amount of $226,911.83. It is unclear what portion, if any, of these fees are included in the above-projected disbursements.

17. Second Modification to Debtors' First Amended Plan, filed 03/31/89.

| | |
|---|---|
| Gillette— Cash accumulated from post-Petition earnings | $ 650,000.00[18] |
| Stein—Cash on hand at Bank One | 744,000.00[19] |
| Cortland Savings & Banking Co. | 275,000.00[20] |
| Stein Equity in Business Real Estate (Noble Romans & Long John Silvers) | 200,000.00 |
| Veres Judgment | 155,000.00 |
| | $2,024,000.00 |

BANCOHIO concluded in its Post–Hearing Brief that Debtors would require One Million, Four Hundred Ninety–Nine Thousand, Two Hundred Seventy–Three & 46/100 Dollars ($1,499,273.46) at confirmation to implement its Plan. The Official Bond Holders Committee estimated the figure at One Million, Five Hundred Seventeen Thousand, Two Hundred Seventy–Three & 86/100 Dollars ($1,517,273.86) in its March 6, 1989 Brief and One Million, Six Hundred Nineteen Thousand, Seven Hundred Eight Dollars ($1,619,708.00) in its March 16, 1989 Brief. Whether using Debtors' figures, BANCOHIO's figures, or the Bond Holder's Committee's figures, Debtors appear to have sufficient funds to implement their Plan.

## DISCUSSION

Chapter 11 is designed to accommodate confirmation of both consensual Plans and those which do not receive the acceptance of all the various classes. To qualify as confirmable, a plan must satisfy all the requirements of 11 U.S.C. Sec. 1129. That section provides two means by which a plan may be confirmed. The first requires satisfaction of all subsection (a) requirements, including (a)(8), which necessitates acceptance of the plan by all impaired classes of claims or interests. The second means, in addition to incorporating all requirements of subsection (a), except for (a)(8), requires

the plan not unfairly discriminate, that it be fair and equitable with respect to each class of impaired claims or interests that has not accepted the plan, and that with respect to unsecured claims, no claims junior to unsecured creditors receive an interest in property under the Plan. 11 U.S.C. Sec. 1129(b).

Sec. 1129 lists twelve (12) prerequisites to the confirmation of a Chapter 11 plan. The first of these is that "the plan complies with the applicable provisions of this Chapter." 11 U.S.C. Sec. 1129(a)(1). The drafters envisioned that "paragraph (1) requires that the plan comply with the applicable provisions of Chapter 11, such as Secs. 1122 and 1123, governing classification and contents of plan." H.R.Rep. No. 595, 95th Cong., 1st Sess. 412 (1977), S.Rep. No. 989, 95th Cong., 2d Sess. 126 (1978), *U.S.Code & Admin.News*, 1978, pp. 5787, 5912, 6368; *see also* 5 *Collier on Bankruptcy*, para. 1129.–02[1] (15th ed. 1987). Title 11 U.S.C. Sec. 1122 addresses classification of claims and provides, in pertinent part:

(a) ... A plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

Classification is a method of recognizing a difference in rights of creditors which calls for a difference in treatment. The focus of classification is the legal character of the claim as it relates to the assets of the debtor. *J. P. Morgan & Co. v. Missouri Pacific Railroad*, 85 F.2d 351, 352 (8th Cir.1936), *cert. denied* 299 U.S. 604, 57 S.Ct. 230, 81 L.Ed. 445 (1936).

Unlike the Debtors' Plan, the BANCOHIO Plan lumps together the claims of the bond holders with the claims of the indenture trustee. Claims of the

---

**18.** Cash is accumulating at the rate of some $50,000 per month over operating expenses.

**19.** Stein is proposing to loan this sum to Gillette to be repaid on a monthly basis as funds are available. In the event Gillette defaults on a payment of its secured obligation to the bond holders or Cortland Savings & Banking Co., the monthly payment to Stein is to be suspended until the default is cured.

**20.** Cortland has agreed to loan Debtors $525,000.00 at 11¾ percent interest per annum, secured by a second mortgage on the nursing home facility. The loan is repayable on a monthly basis upon a 20–year amortization schedule with a seven-year balloon payment.

indenture trustee include entitlement to post-Petition interest, fees and expenses and advances, along with attorney's fees. This classification is inconsistent with the requirements of 11 U.S.C. Sec. 1122(a). The claims of the bond holders are a matter of contract and are not subject to alteration by the Court. As the court stated in *U.S. Truck Co., Inc.*, 42 B.R. 790, 796 (Bankr.E. D.Mich.1984):

> Pre-petition claims arising out of ordinary contractual relationships are closed—they have occurred and the damages are measurable (or estimatable).

The language used by the *U.S.Truck* court aptly describes the claims of the bond holders here. However, the indenture trustee's claims, even though arguably arising under the same contract, are not closed. They are what the *U. S. Truck* court termed "open ended" in character. The fees and expenses of the indenture trustee and its attorneys continue to accrue in these proceedings. Unlike the claims of the bondholders, the fees and expenses of the indenture trustee, both pre- and post-Petition, are subject to the review of this Court and are of a substantially different legal character than the claims of the bond holders. Perhaps the difference in the interests of the indenture trustee and of the bond holders in the assets of the Debtors is most evident when one considers the standard of review which the indenture trustee's entitlement to the Debtors' assets will be judged. The Court will consider the claim of the indenture trustee to attorney fees in light of the extent to which the services rendered were contemplated by contract and the extent to which they benefitted the Debtors' estate. This standard of review is inappropriate with respect to the interests of the bond holders. Because the BANCOHIO Plan contains a classification which is not internally homogeneous, the Plan is nonconfirmable for having failed to meet the requirements of 11 U.S.C. Sec. 1129(a)(1).

The remainder of this Opinion will deal mainly with an analysis of how the Debtors' Plan meets the requirements for confirmation contained in 11 U.S.C. Sec. 1129. Since a reviewing court may disagree with our holding striking the BANCOHIO Plan on the basis of an improper classification, we consider the other reasons why the Debtors' Plan is to be preferred to the BANCOHIO Plan. Thus, a reviewing court will have before it this Court's reasoning on all aspects of confirmation.

11 U.S.C. Sec. 1129(a)(2) requires that the proponent of the Plan comply with the applicable provisions of Chapter 11. Both Plan proponents appear to comply with this requirement.

11 U.S.C. Sec. 1129(a)(3) requires that the Plan be proposed in good faith and not forbidden by law. Both parties here have complained of a lack of good faith on the part of the other. The term "good faith" is left undefined by the Code. However, in the context of a Chapter 11 reorganization, a plan is considered to be in good faith "if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code." *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr.S.D.N.Y.1984); *accord In re White*, 41 B.R. 227, 229 (Bankr.M.D.Tenn.1984). BANCOHIO does not violate the good faith requirement solely because it has proposed a liquidation plan. There has been no evidence that BANCOHIO does not have a reasonable belief that the Debtors' liquidation is in the Bank's best interest. *See* 5 *Collier on Bankruptcy*, 1129.02[3] (15th ed. 1987). We find that both plans are proposed in good faith.

There appears to be no issue with respect to 11 U.S.C. Sec. 1129(a)(4), (5) and (6).[21]

---

21. 1129(a)(4), (5) and (6) provide:

(4) Any payment made or to be made by the proponent by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable;

(5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor

11 U.S.C. Sec. 1129(a)(7) raises an issue for determination. It provides:

(7) With respect to each impaired class of claims or interests—

(A) Each holder of a claim or interest of such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

There are three ways in which a plan can meet the requirements of Sec. 1129(a)(7):

(1) Under this section and Sec. 1126(f), all members of an unimpaired class are deemed to accept the plan; or

(2) All members of a class may affirmatively vote to accept the plan; or

(3) Each nonaccepting member of the class receives at least as much as would be received in a Chapter 7 liquidation of the Debtor.

In determining whether the Plans meet the specifications of Sec. 1129(a)(7), we examine the Plans from the perspective of each of these three requirements.

■ First, we must determine which classes are "unimpaired" under the Debtors' Plan and may be deemed to have affirmatively accepted. Class A consists of administrative expenses entitled to priority pursuant to 11 U.S.C. Sec. 507(a). As this is a class required by statute to be paid in full on confirmation, the class is unimpaired. Class B–1 consists of the allowed secured claim of BANCOHIO on behalf of the bond holders, excluding any portion of the claim provided for in Class B–2. Debtor proposes to cure in full any default which occurred before or after the commencement of this case, without acceler-

ation; to reinstate the maturity of such claims as they existed prior to default and to compensate the holders for damages incurred as a result of the default within ten (10) days of confirmation. Debtors allot that this arrangement will leave unaltered the legal, equitable and contractual rights to which the bond holders are entitled. THE OFFICIAL BOND HOLDERS COMMITTEE and BANCOHIO complain that the Debtors' failure to provide for the complete replenishment of the Debt Service Reserve Fund results in leaving Class B–1 impaired.

The concept of "impairment of a claim or interest under a debtor's plan of reorganization" is defined in 11 U.S.C., Sec. 1124. This section provides that a claim is impaired under a plan of reorganization unless the plan (1) does not alter any of the claimants' contractual rights; (2) cures any default; (3) reinstates the maturity of a claim to its pre-default status; and (4) compensates the claimants for damages incurred due to their reasonable reliance on a particular contractual provision or applicable law. The Trust Indenture and Loan Agreement require Debtors to begin repayment to the Debt Service Reserve Fund in the month following the month of default. The repayment is scheduled to take place over the course of a year in equal monthly installments. *See Trust Indenture*, Sec. 4.04(b) and Loan Agreement, Sec. 2.1(c)(1). Debtors propose to deposit a sum equal to one-twelfth ($\frac{1}{12}$th) of the Two Hundred Sixty–Two Thousand Dollars ($262,000.00) required to bring the Debt Service Reserve Fund to its required balance of Two Hundred Ninety–Five Thousand Dollars ($295,000.00) at confirmation and to pay the remainder due in eleven further installments.

In a widely followed opinion, *In re Tad-*

---

participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

(ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(B) the proponent of the plan has disclosed the identity of any insider that will be em-

ployed or retained by the reorganized debtor, and the nature of any compensation of such insider.

(6) Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

*deo,* 685 F.2d 24 (2d. Cir.1982),[22] the Second Circuit established that the concept of curing defaults under Sec. 1124 necessarily includes the power not only to "deaccelerate" and reinstate the original terms of a debt, but also to restore the relative positions of the parties to their pre-default state. A default is an event in a debtor/creditor relationship which triggers certain consequences—here, acceleration.

> Curing a default commonly means taking care of the triggering event and returning to pre-default conditions. The consequences are, thus, nullified. This is the concept of 'cure' used throughout the Bankruptcy Code.

*Id.* at 26–27. Although the creditors' rights arising out of acceleration are, in fact, affected by cure and reinstatement, they are deemed unimpaired. *See, e.g., In re Forest Hills Assoc.,* 40 B.R. 410, 414 (Bankr.S.D.N.Y.1984); *In re Madison Hotel Assoc.,* 29 B.R. 1003, 1006 (Bankr.W.D. Wis.1983); *In re Masnorth Corp.,* 28 B.R. 892, 894; *In re Barrington Oaks General Partnership,* 15 B.R. 952 (Bankr.D.Utah 1981).

It is, thus, clear that Code Sec. 1124(2) provides the debtor-in-distress with the statutory tools necessary to effect a total healing of the scars of contractual default by placing the parties into the same position as they were immediately before the default occurred. This healing is accomplished by paying the creditor whatever he would have received under the contract had the debtor not defaulted. The creditor is nevertheless rightfully categorized as unimpaired, for he is returned to the same position he was in immediately prior to the default and is thereby given the full benefit of his original bargain.

■ THE OFFICIAL BOND HOLDERS COMMITTEE and BANCOHIO next complain that the Debtors' conveying of a second mortgage against the project assets to CORTLAND impairs the bond holders'

class. They opine that the Trust Indenture and Loan Agreement preclude a second mortgage on the property. However, these instruments do not preclude a second mortgage where the indenture trustee agrees to a second mortgage. 11 U.S.C. Sec. 1123(a)(5)(E) provides that "a plan shall provide adequate means for its execution, such as satisfaction or modification of any lien." *Collier* explains that "the plan may propose such actions notwithstanding non-bankruptcy law or agreements." 5 *Collier,* para. 1123.01[5] at 1123–10 (15th ed. 1987). 11 U.S.C. Sec. 1142 provides for plan implementation by directing the debtor and any other necessary party to:

> execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, ... that is necessary for the consummation of the plan.

Thus, it is permissible under the Code for the contract provision permitting a modification to be effectuated. The bond holders have little cause to complain where they are to receive full repayment of all sums due and owing. Permitting the second mortgage neither alters, diminishes, nor enhances rights under the contract. Under these circumstances, the second mortgage does not constitute an impairment.

THE OFFICIAL BOND HOLDERS COMMITTEE further argues that the seventh-year balloon payment to CORTLAND BANK serves to impair the interests of the bond holders. THE OFFICIAL BOND HOLDERS COMMITTEE could not describe in particular how this served as an impairment, and the Court declines to speculate.

■ Debtors' Classes B–2, C, F, and G are proposed to be satisfied in full within forty-five (45) days of the effective date of the Plan or, in the event of an objection to a claim in one of these classes, payment is

22. *In re Centre Court Apartments, Ltd.,* 85 B.R. 651 (Bankr.N.D.Ga.1988); *In re Entz–White Lumber & Supply, Inc.,* 850 F.2d 1338 (9th Cir. 1988); *In re Manville Forest Products Corp.,* 43 B.R. 293 (Bankr.S.D.N.Y.1984); *In re Forest Hills Assoc.,* 40 B.R. 410 (Bankr.S.D.N.Y.1984);

*In re Masnorth Corp.,* 36 B.R. 335 (Bankr.N.D. Ga.1984); *In re Rainbow Forest Apartments,* 33 B.R. 576 (Bankr.N.D.Ga.1983); *Valente v. Savings Bank of Rockville,* 34 B.R. 362, 363; (D.Conn.1983).

to be made within twenty (20) days of the allowance of such claim by final Order of the Court. These classes do not appear to be impaired and no objections have been made with respect to these classes. The remaining class, Class D, consists of STEIN. As an insider, STEIN's acceptance is immaterial with respect to satisfying the requirements of Sec. 1129(a)(7).

Since we have determined there are no impaired classes under the provisions of Sec. 1129(a)(7), the Plan meets the requirements of Sec. 1129(a)(8), which requires that each class of claims or interests accept the plan or be found to be not impaired under the plan. Secs. 1129(a)(9) and (10) are not relevant to our discussion here.[23]

## CLAIM OF BANCOHIO

A. *Positions of the Parties.* BANC-OHIO filed its Proof of Claim on September 28, 1987. Debtors objected to the claim on December 7, 1988, on the following bases:

(1) The amount of the claim is in excess of that owed by debtors and a full and detailed accounting with respect to all credits and debits upon charges assessed against debtors has not been provided.

(2) Included in such claims are charges for penalties, service fees, and attorney fees which are excessive, not allowable as provided by applicable provisions of law, or the underlying contractual relationship between debtors and claimant.

BANCOHIO responded to the Objection on January 23, 1989. By Order of March 8, 1989, we directed the parties to submit whatever supplementation the parties deemed necessary on the issue of BANC-OHIO's Proof of Claim prior to the close of business on March 14, 1989. Thereafter, the Court would consider the matter on the papers filed. Both parties made supplemental filings; Debtors filed a brief on March 14, 1989, and BANCOHIO responded to it on March 16, 1989.

In its January 23, 1989 response, BANC-OHIO clarified that it is relying upon Sec. 506(b) of the Bankruptcy Code to support its claim for pre-petition fees and expenses. Sec. 506(b) provides:

(b) To the extent that an allowed secured claim is secured by property, the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Sec. 2.1(C)(ii) of the Loan Agreement set forth the contractual terms under which GILLETTE might be obliged for fees and expenses, as follows:

(C) To the Trustee [BANCOHIO], the reasonable fees, charges and expenses of the trustee as Trustee, bond registrar, and paying agent, and of any other paying agent on the Bonds under the Indenture; all as provided in the

---

23. 11 U.S.C. Secs. 1129(a)(9) and (10) provide: (9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—
(A) with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;
(B) with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5), or 507(a)(b) of this title, each holder of a claim of such class will receive—
(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and
(C) with respect to a claim of a kind specified in section 507(a)(7) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.
(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

Indenture, as and when the same become due; provided that the Company may, without creating a default hereunder, contest in good faith the necessity of any Extraordinary Services and Extraordinary Expenses as such terms are defined in the Indenture, and the reasonableness of any such fees, charges, or expenses.[24]

The open-end mortgage and security agreement provided for securing BANC-OHIO's fees with the first mortgage.[25] The loan agreement specifically provided that attorney's fees and expenses incurred by BANCOHIO are "expenses" of the trustee.[26]

With respect to post-Petition fees and expenses, BANCOHIO asserts an entitlement to allowance of an administrative claim. BANCOHIO relies on Sec. 503(b)(3)(D) and Sec. 503(b)(4) in this regard.[27] These provisions of Sec. 503 provide as follows:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under Sec. 502(f) of this title, including—

\* \* \* \* \* \*

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

\* \* \* \* \* \*

(D) a creditor, an indenture trustee, equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under Sec. 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

...

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expenses allowable under paragraph (3) of this subsection, based on the time, the

---

**24.** *See also* Sec. 6.04 at p. 24 and Sec. 7.02 at p. 28–29 of the Trust Indenture, providing:

Sec. 6.04. *Payments to Trustee.*
Pursuant to the provisions of the Loan Agreement, the Company has agreed to pay to the Trustee, continuing until the outstanding bond shall have been fully paid and discharged in accordance with the provisions of the Indenture, the reasonable fees, charges, and expenses of the Trustee, as trustee (for Ordinary and Extraordinary Services and Expenses), Bond Registrar and Paying Agent, as and when the same became due; provided, that the Company may, without creating a default thereunder, contest in good faith the necessity for any such Extraordinary Services and Extraordinary Expenses and the reasonableness of any such fees, charges, or expenses.
Sec. 7.02 *Fees, Charges, and Expenses of Trustee.*
Subject to the provisions of Sec. 6.04 hereof, the Trustee shall be entitled to payment and/or reimbursement for reasonable fees for its Ordinary Services rendered hereunder and all advances, counsel fees, and other Ordinary Expenses reasonably and necessarily made or incurred by the Trustee in connection with such Ordinary Services and, in the event that it should become necessary that the Trustee perform Extraordinary Services, it shall be entitled to reasonable extra compensation therefor, and to reimbursement for reasonable and necessary extraordinary expenses in connection therewith;
...

**25.** Sec. 22 at page 10 of the Mortgage provides:

**22.** *Security for Loan.*
This Mortgage is intended to secure, as a first mortgage, the principal amount outstanding on the project bonds and premium, if any, and interest thereon and Additional Payments and other payments to be made under the Loan Agreement, the Note, the Indenture, or this Mortgage relating thereto.
*See also* Sec. 8.06 of the Trust Indenture, providing that BANCOHIO is to receive its fees and expenses ahead of other distributions. BANC-OHIO also asserts the following as security for its fees and expenses: (1) POST LAND COMPANY funds; (2) judgment lien against real estate holdings of STEIN; (3) assignment of judgment lien against Dr. Frank G. Veres.

**26.** Sec. 9.4 of the Loan Agreement, at p. 44, provides:
Sec. 9.4. *Agreement to Pay Attorneys' Fees and Expenses.*
In the event the Company should default under any of the provisions of this Loan Agreement and the Issuer [Trumbull County] or the Trustee should employ attorneys or incur other expenses for the collection of Loan Payments or the enforcement of performance or observance of any obligation or agreement on the part of the Company contained in this Loan Agreement, the Company shall, on demand therefor, reimburse the reasonable fee of such attorneys, to the extent permitted by law, and such other expenses so incurred.

**27.** *See* 01/23/89 Response of BANCOHIO, p. 9, ftnote 1.

nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

B. *Amounts Claimed by BANCOHIO.* BANCOHIO set forth the "four basic components" to its claim.[28]

1. Principal and interest owing to the bond holders.

2. Unreimbursed advances totalling Eight Thousand, Nine Hundred Twenty–Nine & 25/100 Dollars ($8,929.25) made by BANCOHIO pursuant to October 3, 1986 Order of Judge Dowd.

3. The fees and expenses of BANCOHIO for the services it has rendered in administering the bond issue and responding to the bond default.

4. The attorney's fees and expenses incurred by BANCOHIO as a result of the bond default.

Each of these components is discussed separately below.

1. The portion of the claim seeking principal and interest owing to the bond holders is not in dispute. Debtors' Plan provides for full payment of interest arrearages and for replenishment of the Debt Service Reserve Fund pursuant to the terms of the agreement between the parties. Accordingly, this portion of the claim is allowed.

2. The portion of the claim relating to unreimbursed advances made by BANCOHIO, purportedly pursuant to an Order of Judge Dowd, is disallowed. The Proof of Claim set forth a lump-sum figure of Thirty Thousand, Three Hundred Ninety–Seven & 29/100 Dollars ($30,397.29). In response to Debtors' objections seeking a detailed breakdown of the items paid, BANCOHIO reduced the amount due to Eight Thousand, Nine Hundred Twenty–Nine & 25/100 Dollars ($8,929.25). BANCOHIO explained, "[s]ince the Proofs of Claim were filed, adjustments have been made for additional debits and credits." [29] None of the exhibits submitted by BANCOHIO contains a list of the items which constitute the Thirty–Thousand, Three Hundred Ninety–Seven & 29/100 Dollars ($30,397.29), nor accounts for the "credits", nor does any set out BANCOHIO's authority to apply credits to the amount claimed. The claim fails for lack of proof.

3. The third component of the claim relates to fees and expenses incurred by BANCOHIO, other than attorneys' fees and expenses. BANCOHIO contends, and the Court agrees, that its claim for pre-Petition fees and expenses is governed by 11 U.S.C. Sec. 506(b). We find that the estate has a value greater than the pre-Petition amounts claimed.[30] Therefore, the Court may consider the pre-Petition fees and expenses based on their reasonableness in light of the contract between the parties. "Ordinary Services" and "Ordinary Expenses" total Ten Thousand, Three Hundred Sixty–Five & 57/100 Dollars ($10,365.57). The charges are detailed in Exhibit 3 to BANCOHIO's January 23, 1989 Response Brief and are not disputed. This portion of the claim is allowed as reasonable fees and expenses contemplated by the parties' contract. The portion of the claim relating to Extraordinary Fees and Expenses is disallowed. The Trust Indenture specifies that:

'If such Extraordinary Services or Extraordinary Expenses are occasioned by the neglect or misconduct of the Trustee, it shall not be entitled to compensation or reimbursement therefor.[31]

As BANCOHIO pointed out, 'Allowance of reasonable fees and expenses pursuant to Sec. 506(b) is a matter of federal, not state, law.' [32]

---

**28.** *See* January 23, 1989 Response Brief, p. 2.

**29.** *See* January 23, 1989 Response, p. 4, and Exhibit 2 to that Response.

**30.** *See* p. 882, *infra,* discussing valuation of GILLETTE facility.

**31.** Sec. 7.02, p. 29, Trust Indenture.

**32.** *See* January 23, 1989 Response Brief, p. 9, citing *Unsecured Creditors Committee v. Walter E. Heller,* 768 F.2d 580, 585 (4th Cir.1985); *Joseph F. Sanson Investment Co. v. 268 Ltd.,* 789 F.2d 674, 675 (9th Cir.1986); *Blackburn–Bliss*

■ The burden of proof to show entitlement to fees is always on the applicant. *In re Lindberg Products, Inc.,* 50 B.R. 220, 221 (Bankr.N.D.Ill.1985); *In re Harman Supermarket, Inc.,* 44 B.R. 918, 920 (Bankr.W.D.Va.1984); *In re Horn & Hardart Baking Co.,* 30 B.R. 938, 939 (Bankr. E.D.Pa.1983). Since every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or for use by the debtor, this burden is not to be lightly regarded. *In re Hotel Assoc. Inc.,* 15 B.R. 487, 488 (Bankr.E.D.Pa.1981). Here, Debtors raised serious allegations concerning misapplication of bond proceeds. Debtors alleged that BANCOHIO did not adhere to the procedures outlined in Item 4.4 of the Loan Agreement in making disbursements. Because of this breach, Debtors lacked sufficient funds to allow a timely completion of construction. Debtors particularly raised questions and requested substantiating documentation for the following disbursements: [33]

1. $52,762.60 on 10/31/84 to International Construction Company.
2. $50,000.00 on 01/14/85 to International Furnishings Corporation.
3. $125,000.00 on 01/23/85 to International Furnishings Corporation.
4. $27,950.00 on 04/22/85 to International Furnishings Corporation.
5. $38,536.66 on 05/29/85 to International Furnishings Corporation.
6. $15,806.00 on 07/23/85 to International Construction Corporation.
7. $31,688.00 on 07/11/85 to International Construction Corporation.
8. $35,000.00 on 08/22/85 to Health Resources Management Corporation.
9. $15,500.00 on 08/29/85 to Kenneth Eversole.
10. $30,000.00 on 09/25/85 to Kenneth Eversole.

In spite of the seriousness of these allegations, BANCOHIO provided no information to Debtors or the Court concerning the propriety of its disbursements, or the manner in which the disbursements were made. As discussed earlier, even when faced with what one would expect to be a simple matter of itemizing the advances it claimed to have made, BANCOHIO chose to rest on responding with a different figure, also with no verification. Patently, BANCOHIO has failed to carry its burden to show entitlement to Extraordinary Fees and Extraordinary Expenses under its agreements with GILLETTE.

Even if we had found that the record supported a finding that the Bank met its burden of proof on the issue of neglect or misconduct in its disbursements, we would still be compelled to disallow the claim for Extraordinary Fees. Under Sec. 506(b), BANCOHIO is only entitled to those fees, costs, or other charges this Court deems "reasonable". The only documentation concerning the fees is contained in Exhibit 3 to the January 23, 1989 Response Brief. That Exhibit contains insufficient information for the Court to make a determination as to the reasonableness of the charges. The Exhibit is devoid of information concerning the dates on which time was spent or the nature of the activity. The standards which this Court is obliged to follow on the "reasonableness" issue were clearly set out in the cases which BANCOHIO itself cited to the Court.[34] We can only guess why BANCOHIO did not supply the documentation required for a "reasonableness" determination and we decline to render judgments based on guesses.

■ 4. The last component of BANCOHIO's claim consists of its demand for pre-Petition attorney fees and expenses under 11 U.S.C. Sec. 506(b). Sec. 9.4 of the Loan Agreement (quoted *infra* at f. 25) provides that BANCOHIO is entitled to "reasonable" attorney's fees and expenses incurred as a result of a default by GILLETTE. BANCOHIO's burden under this Section appears to be less than its burden under Sec. 7.02 of the Trust Indenture.

*Trust v. Hudson Shipbuilders, Inc.,* 794 F.2d 1051 (5th Cir.1986).

**33.** Exhibit 2 to BANCOHIO's Brief of March 16, 1989.

**34.** *See* ftnote 31.

Sec. 9.4 contains no requirement that BANCOHIO demonstrate that it was not neglectful nor guilty of misconduct. Debtors chose not to submit evidence on this issue.[35] Therefore, we proceed with an analysis of the reasonableness of the pre-Petition attorney fees and expenses. Even though BANCOHIO has maintained that its entitlement to pre-petition fees and expenses is governed by Sec. 506(b), and its entitlement to post-Petition fees and expenses is governed by Sec. 503(b)(3)(D) and Sec. 503(b)(4), BANCOHIO has not provided the Court with a document containing a breakdown of the amounts sought for pre-Petition fees and expenses and those sought for post-Petition expense fees and expenses. Rather, it is necessary to combine the Proof of Claim filed September 28, 1987, and the breakdowns of charges in the Response Brief filed January 23, 1989.[36] The Proof of Claim provides lump-sum figures through June 19, 1987, which are presumably the pre-Petition figures. By subtracting these figures from figures contained in the January 23, 1989 Response Brief, purporting to be totals through December 31, 1988, we arrive at the post-Petition claim. The breakdown is as follows:

| | Fees and Expenses at 06/19/87 | Fees and Expenses at 12/31/88 | Post–Petition Claim |
|---|---|---|---|
| | (Proof of Claim filed 09/28/87) | (Brief Filed 01/23/89) | |
| Attorney Fees | 137,477.57 | 226,911.83 | 89,434.26. |

BANCOHIO did not provide a breakdown of the hourly rates charged for those performing services. By dividing the total hours reported (1,922) into the total fees charged ($209,805.00), we determined the blended average rate to be $109.16 per hour for work performed by both professional and para-professional personnel. Based on the type of work performed, we conclude that an average hourly rate of $109.16 is reasonable. We have reviewed the detailed bills submitted by BANCOHIO's attorneys on a line-by-line basis. Appendix 1 contains the Court's determination of hours disallowed and the Court's reason for each such disallowance.[37] In summary, a total of 979.1 hours were charged for services through June 19, 1987. We have disallowed 193.3 of these hours. The Court deducted as unreasonable all time which appeared to be charged for the attorneys within the law firm talking with one another where the need for multi-attorney conference is not shown or where the attorneys' time charges for the same conference are differing. These are denoted on Appendix 1 as "interoffice communication." Approximately one-half of the hours charged for paralegals was deducted, as an hourly rate of $109.16 is believed excessive for paralegal activity. Further, we have reduced the travel time charges, finding that $109.16 is excessive for travel. Deductions are made where it is impossible to determine whether the charge was reasonable from the description provided, or where two attorneys or more appeared to charge for identical work and no explanation of the need for two or more attorneys was provided.

**35.** *See* March 14, 1989 Brief of Debtors at p. 6, where the Debtors state,
> Debtor has proposed and is prepared to pay the claim of the individual bond holders, with reservation of such rights against BANCOHIO as it may be entitled to assert by virtue of, and in the event that a correlation between the construction shortfall and the method by which BANCOHIO disbursed bond proceeds is found to exist.

**36.** The breakdown of attorney's charges was submitted as Exhibit 4 of BANCOHIO's January 23, 1989 Response Brief. A copy is annexed here as "Appendix 1".

**37.** In making these determinations, we have generally applied the standards of 11 U.S.C. Sec. 330 and the common law which has evolved therefrom.

Expenses charged through the time of the filing of the Petition appear to be in the neighborhood of $8,500.00. These expenses are disallowed in their entirety. BANCOHIO is represented by sophisticated counsel who cited the appropriate cases and standards to be applied by this Court.[38] Well-settled case law indicates that a court cannot merely rubberstamp charges as reasonable where no indication of the amounts charged is provided. For example, we were not advised why outside professional services were needed, or what they were. We are unadvised concerning the necessity for delivery services and computer-assisted research. We do not know what court fees were paid, or where, or the amounts charged for copies, telecopies, or the rate of charges for telephone and travel. As we noted earlier, the burden is on the applicant. BANCOHIO has not carried its burden.

■ With respect to BANCOHIO's claim to entitlement to administrative expenses under 11 U.S.C. Sec. 503, the claim is denied in its entirety. The burden of proving entitlement to an administrative expense is on the claimant and the standard of proof is a preponderance of the evidence. *In re 1 Potato 2, Inc.*, 71 B.R. 615 at 618 (Bankr.D. Minn.1987) (citing *Matter of Patch Graphics*, 58 B.R. 743, 746 (Bankr.W.D.Wisc. 1986). Section 503 requires a showing of a "substantial contribution" to the bankruptcy estate. BANCOHIO has made no such showing. We agree with the analysis and conclusions reached by the court in *In re Rockwood Computer Corp.*, 61 B.R. 961 (Bankr.S.D.Ohio 1986). There, fees of the indenture trustee were disallowed because the court found that the indenture trustee did not make a "substantial contribution" as required under Sec. 503. The court stated:

... We do not believe that the 'substantial contribution' required by Sec. 503(b)(4) is to be found in connection with the performance of the normal tasks required of counsel representing the proponent of a Chapter 11 plan. The formulation of a disclosure statement and plan,

of course, falls into this category. Where the disclosure statement and plan are presented by the debtor which is represented by an attorney appointed by the court pursuant to Sec. 330, that attorney is entitled to compensation for that work. Another attorney who contributes to these matters is merely performing an activity [which] amounts to the performance of some function or duty of the trustee, debtor-in-possession, or other officer of the estate, and compensation should not be awarded to such a claimant.

Here, both the Debtors and the bond holders are represented by counsel appointed by the Court pursuant to 11 U.S.C. Sec. 330. The Indenture Trustee did not seek appointment under Sec. 330. It has not and cannot demonstrate that its services were of a benefit to the Debtors' estate or to the other creditors. Its opposition to use of the POST LAND COMPANY funds and to the compromise with TONN & BLANK increased both the Debtors' and TONN & BLANK's expenses. It appears the services were performed primarily for the benefit of BANCOHIO and did not make a substantial contribution in this case.

In addition to reasons already discussed, there are other reasons for preferring Debtor's Plan over that proposed by BANCOHIO. Because some of these reasons also serve to support our conclusion that BANCOHIO did not make a substantial contribution to this case, we believe a brief articulation of these reasons is appropriate.

The Debtors' Plan is consistent with the purpose of Chapter 11, which provides an alternative to liquidation. As the Supreme Court acknowledged in *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), the Bankruptcy Court is a court of equity, but in performing its equitable duties the Court must focus on the ultimate goal of Chapter 11. In the Supreme Court's view,

---

**38.** *See* January 23, 1989 Response Brief, p. 9.

The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources. *See* H.R.Rep. No. 95–595, p. 220 (1977).

465 U.S. at 527–28, 104 S.Ct. at 1196–97 (1984). This view was reinforced in *United States v. Whiting Pools, Inc.*, 462 U.S. 198 at 203, 103 S.Ct. 2309 at 2312–13, 76 L.Ed.2d 515, where the court stated:

> ... By permitting reorganization, Congress anticipated that the business would continue to provide jobs, to satisfy creditors' claims, and to produce a return for its owners. H.R.Rep. No. 95–595, p. 220 (1977). Congress presumed that the assets of the debtor would be more valuable if used in a rehabilitated business than if 'sold for scrap.'

A harmonizing view was expressed by the Sixth Circuit in *Matter of Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985). There, the court stated:

> The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state.

*See also Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946); *In re Nite Lite Inns*, 17 B.R. 367 (Bankr.S.D.Cal.1982) (Liquidation plans should be secondary concerns unless debtor chooses such a course or the necessities of justice require it).

Debtors' Plan is fair and equitable. It proposes to pay all creditors in full. BANCOHIO's proposal to liquidate both GILLETTE and STEIN is not fair and equitable to these Debtors. Liquidation would deprive STEIN of the opportunity to recoup his investment of time, close to 1.4 million dollars in advances, and his lifetime savings and livelihood. Further, STEIN testified to the receipt of offers for the GILLETTE facility of 3.1 million, 3.2 million, 3.3 million, and 3.7 million dollars. WARREN GENERAL, the very buyer proposed in BANCOHIO's liquidation plan, made an offer of 3.2 million dollars prior to the time the facility was in operation. Our Memorandum Opinion of November 2, 1987 found "[t]he 3.1 million dollar offer for the facility represents a minimum evaluation." It is curious that now that the facility is completed, is filled to capacity and has a waiting list of patients, and is showing a profit, BANCOHIO would propose a plan to liquidate GILLETTE and surrender its Certificate of Need and licenses to WARREN GENERAL for a lower 3 million-dollar offer.

## FEASIBILITY OF DEBTORS' PLAN

11 U.S.C. Sec. 1129(a)(11) provides:

Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

The standards to be utilized by courts examining the feasibility of plans are set forth in *In re Cherry*, 84 B.R. 134, 138 (Bankr.N.D.Ill.1988), thusly:

> ... When examining the feasibility of a business operation, the court should consider the adequacy of the capital structure, the earning power of the business, the economic conditions, the abilities of management, the continuity of the present management, and other matters which determine the prospects of the sufficiently successful business operation. *In re Clarkson*, 767 F.2d 417 (8th Cir. 1985). The plan must offer a reasonable prospect of success and [be] workable.... 'Success need not be guaranteed.' *In re Monnier Bros.*, 755 F.2d 1336, 1341 (8th Cir.1985) (quoting *United Properties, Inc. v. Emporium Department Stores, Inc.*, 379 F2d 55, 64 (8th Cir.1967).

*See also In re U. S. Truck Co., Inc.*, 800 F.2d 581, 589 (6th Cir.1986); *Federal Land Bank of Columbia v. Cheatham*, 91 B.R. 377 (E.D.N.C.1988).

■ First, we find that the continuation of present management would benefit all parties in interest. Debtors' problems stemmed from a lack of funds to complete construction, not from mismanagement of

the facility. Once construction of the facility was complete, Debtors were able to begin operations and to maintain the operations in an exemplary fashion. Evidence of management's ability is evident in Debtors' payment of all operating expenses and accumulation of more than Six Hundred Fifty Thousand Dollars ($650,000.00) for distribution on pre-Petition debts. Based on the filings of the parties, the testimony adduced at hearing, and the monthly reports filed by Debtors, we find that the Debtors reasonably can be expected to have future net earnings and cash flow sufficient in amount to meet the restructured obligations.

Second, we find that Debtors' proposed new capital structure, including the relationship of debt to equity, is sound.

For the foregoing reasons and on the authorities cited, the Debtors' Plan is confirmed. An appropriate Order shall issue.

### ORDER

For reasons set forth in the Court's Memorandum Opinion entered of even date, the claim of BANCOHIO NATIONAL BANK for principal and interest owing to the bond holders through April 1, 1989, is allowed in full. The claim of BANCOHIO NATIONAL BANK for Ordinary Services and Expenses is allowed in the amount of Ten Thousand, Three Hundred Sixty–Five & 57/100 Dollars ($10,365.57). The claim of BANCOHIO NATIONAL BANK for pre-Petition attorney fees incurred as a result of the bond default is allowed in the amount of Eighty–Five Thousand, Seven Hundred Seventy–Seven & 93/100 Dollars ($85,777.93). The remainder of BANCOHIO NATIONAL BANK's Proof of Claim, and its claim for administrative expenses, is disallowed.

Debtors' First Amended Plan of Reorganization, as modified, is confirmed. Debtors' counsel shall prepare an appropriate Order and submit it to the Court within seven days of entry of this Order.

IT IS SO ORDERED.

**APPENDIX 1**

| Date | Description | Atty../Hours | | HOURS DISALLOWED | REASON |
|---|---|---|---|---|---|
| 1/27/86 | Telephone conference with Tim Adryan of BancOhio regarding default. | FAS | .60 | | |
| 2/21/86 | Telephone conference with Trustee. | FAS | .20 | | |
| 3/12/86 | Telephone conference with Tim Adryan regarding default. | FAS | .40 | | |
| 3/21/86 | Telephone conference with Tim Adryan regarding default. | FAS | .30 | | |
| 3/24/86 | Review indenture regarding default; meeting with Tim Adryan. | FAS | 2.60 | | |
| 3/24/86 | Meeting with client; analyze law; conference with FAS, BMW and MFB; review documents regarding Certificate of Need. | PAP | 1.70 | .50 | Interoffice communication |
| 3/24/86 | Confer with PAP; research regarding transfers of Certificate of Need; confer with paralegal JMM regarding review of Certificate of Need application at State Health Planning and Development Agency ("SHPDA"). | BMW | 1.20 | 1.00 | Interoffice communication |
| 3/24/86 | Telephone conference regarding partnership law. | MFB | .50 | .50 | No designation of who conference w/ |
| 3/24/86 | Review file at SHPDA; confer with PAP and BMW. | JMM | 1.50 | .50/.70 | Interoffice communication/ paralegal |
| 3/25/86 | Confer with Mike Bigler. | PAP | .30 | | |
| 3/28/86 | Telephone conference with Rhonda Bernstein and Tim Adryan. | FAS | .60 | | |
| 3/31/86 | Telephone conference with Rhonda Bernstein. | FAS | .30 | | |
| 4/3/86 | Telephone conference with Joe Sesler and Tim Adryan. | FAS | .20 | | |
| 4/4/86 | Conference with PAP and JCW. | FAS | .70 | .70 | Interoffice communication |
| 4/4/86 | Conference with PAP and FAS. | JCW | .30 | .30 | |
| 4/4/86 | Conference with DJY, FAS and JCW; telephone conference with Administrative Review Board and SHPDA; research. | PAP | 1.50 | .50 | |

**PAGE TOTALS**    12.9    4.7

## APPENDIX 1—Continued

| Date | Description | | | | |
|------|-------------|----|------|-----|---------------------------|
| 4/9/86 | Conference with DJY. | PAP | .10 | .10 | Interoffice communication |
| 4/22/86 | Telephone conference with Joe Sesler and Kathy Hartner; review complaints for foreclosure. | FAS | 1.50 | | |
| 4/23/86 | Telephone conference with Atty. Steve Mershon. | FAS | .20 | | |
| 4/23/86 | Review pleadings filed by other creditors in federal court and Trumbull County. | JCW | 1.00 | | |
| 4/24/86 | Telephone conference with Atty. Mike Allison and Joe Sesler of BancOhio. | FAS | 1.10 | | |
| 4/24/86 | Confer with FAS and Steve Mershon regarding extension; review foreclosure pleading; prepare memorandum to file. | JCW | 2.40 | .40 | Interoffice communication |
| 4/25/86 | Review documents received from Trustee. | JCW | .40 | | |
| 4/28/86 | Telephone conference with Trustee. | FAS | .40 | | |
| 5/3/86 | Prepare answer, counterclaim and crossclaim for filing in federal court action. | JCW | 3.00 | | |
| 5/5/86 | Confer with FAS; revise answer. | JCW | .50 | .20 | Interoffice communication |
| 5/5/86 | Telephone conference with Joe Sesler and Kathy Hartner. | FAS | .80 | | |
| 5/9/86 | Confer with firm attorneys. | FAS | .80 | .80 | Interoffice communication |
| 5/9/86 | Draft answer, counterclaim and cross-claim in state court foreclosure proceeding. | JCW | 2.90 | | |
| 5/14/86 | Correspond to Kathy Hartner and attorney Allison regarding status; correspond to attorney representing mechanic's lien-holders; review title policy; confer with Dave Sidor. | JCW | 1.00 | | |
| 5/15/86 | Telephone conference with Kathy Hartner. | FAS | .20 | | |
| 5/22/86 | Review pleadings - filed by other parties to foreclosure actions. | JCW | .20 | | |
| 5/27/86 | Review notice of conference from court; correspond to Trustee regarding same. | JCW | .30 | | |
| | PAGE TOTAL | | 16.80 | 1.5 | |

-2-

## APPENDIX 1 —Continued

| Date | Description | Atty | Hours | Deduction | Reason |
|---|---|---|---|---|---|
| 5/28/86 | Review pleadings filed in state court foreclosure case by Second National Bank. | JCW | .30 | | |
| 5/29/86 | Confer with attorney Zuzolos' office regarding update of title information. | JCW | .30 | | |
| 6/4/86 | Confer with attorney Lorenzetti regarding title report. | JCW | .30 | | |
| 6/5/86 | Review reply to BancOhio's counterclaim. | JCW | .20 | .20 | Interoffice Communication |
| 6/9/86 | Confer with JCW. | FAS | .20 | .20 | Interoffice Communication |
| 6/9/86 | Review letter from Swink & Company and pleadings; confer with FAS. | JCW | .60 | | |
| 6/11/86 | Meeting with Joe Sesler, Noel Knox and Kathy Hartner of BancOhio. | FAS | 1.20 | .90 | Duplicate Charges. No explanation of need for two attorneys |
| 6/11/86 | Prepare for meeting; attend meeting with Joe Sesler, Noel Knox, Kathy Hartner and FAS regarding status and strategy. | JCW | .90 | | |
| 6/12/86 | Prepare for status conference; travel to Akron and attend status conference before Judge Dowd; correspond to Trustee regarding status conference; prepare memo to the file regarding same; confer with FAS regarding same. | JCW | 6.00 | 2.30 | Travel time / Interoffice Communication |
| 6/16/86 | Confer with JCW. | FAS | .30 | .30 | Interoffice Communication |
| 6/16/86 | Review bond documents and other client provided material; confer with attorney Lorenzetti regarding title information; confer with DSS and FAS regarding same; | JCW | 6.10 | .50 | Interoffice Communication |
| 6/16/86 | Confer with JCW; prepare summary of client provided documents. | KLW | 1.40 | .30 / .70 | Paralegal |
| 6/17/86 | Confer with JCW regarding disbursement of funds. | PAS | .20 | .20 | Interoffice Communication |
| 6/17/86 | Research regarding priority of open-end mortgage versus mechanic's lien and disbursement issues; confer with Kathy Hartner regarding account balances. | JCW | 2.40 | | |
| 6/18/86 | Prepare letter to Judge Dowd; confer with FAS and Kathy Hartner regarding same. | JCW | 3.40 | .20 | Interoffice Communication |
| | **PAGE TOTAL** | | 23.8 | 5.80 | |

## APPENDIX 1 —Continued

| Date | Description | | | | Note |
|------|-------------|----|------|------|------|
| 6/18/86 | Review correspondence to Judge Dowd. | FAS | .20 | | |
| 6/19/86 | Confer with Kathy Hartner regarding financial details; finalize letter to Judge Dowd. | JCW | 3.00 | | |
| 6/20/86 | Review correspondence to Judge Dowd. | FAS | .60 | | |
| 6/23/86 | Telephone conference with JCW regarding fiduciary duty of Trustee. | FAS | .50 | .50 | Interoffice Communication |
| 6/23/86 | Confer with JPW. | PAP | .30 | .30 | |
| 6/24/86 | Prepare for status conference; travel to Akron; attend status conference; confer with Messrs. Sesler, Stein, Eversole, Blank, Zimmerman, Budish, Dingledy, Landers and Swindall; travel to Warren with Joe Sesler to view project facility. | JCW | 8.00 | 3.00 | Travel Time |
| 6/25/86 | Confer with Joe Sesler regarding status of project; confer with FAS and DBG regarding issues raised at status conference. | JCW | 2.20 | 1.90 | Interoffice Communication |
| 6/25/86 | Confer with JCW and FAS. | DBG | .90 | .90 | |
| 6/25/86 | Confer with JCW and DBG. | FAS | 1.90 | 1.90 | |
| 6/26/86 | Confer with Joe Sesler; review order regarding status conference and request for documents. | JCW | .50 | | |
| 6/26/86 | Confer with KRM. | FAS | .40 | .40 | KRM unknown/unidentified |
| 6/27/86 | Telephone conference with Dick Kane and with Noel Knox regarding insurance. | FAS | .80 | | |
| 6/27/86 | Confer with attorney Gilligan regarding pleadings and status; confer with attorney Kane regarding bond documents. | JCW | .40 | .40 | |
| 6/30/86 | Confer with firm attorneys. | FAS | .40 | .40 | Interoffice Communication |
| 6/30/86 | Confer with attorney Coleman regarding bond documents; confer with DBG. | JCW | .30 | .10 | .10 | Interoffice Communication |
| 6/30/86 | Confer with firm attorney. | PAP | .10 | | |
| 7/1/86 | Telephone conference with Dick Kane. | FAS | .30 | | |
| 7/1/86 | Confer with firm attorneys. | JCW | .50 | .50 | Interoffice Communication |
| | **PAGE TOTAL** | | 21.3 | 10.0 | |

-4-

## APPENDIX 1—Continued

| Date | Description | | | | |
|---|---|---|---|---|---|
| 7/2/86 | Meeting with Messrs. Sesler, Knox and Allison. | FAS | .50 | .50 | No explanation re need for two attorneys |
| 7/2/86 | Prepare for meeting; meeting with Messrs. Sesler, Knox and Allison. | JCW | 1.80 | | |
| 7/8/86 | Confer with MLT regarding question of separate counsel for bondholders. | JCW | .30 | .30 | Interoffice communication |
| 7/8/86 | Confer with MLT. | MLT | .30 | .30 | |
| 7/9/86 | Research. | MLT | 4.90 | 4.90 | Research not identified |
| 7/9/86 | Confer with attorneys Coleman, Gilligan, and Budish regarding status; confer with MLT regarding letter to Judge Dowd; review file regarding discovery. | JCW | 1.40 | .30 | Interoffice communication |
| 7/10/86 | Research. | MLT | 5.20 | 5.20 | Research not identified |
| 7/13/86 | Prepare memorandum regarding question of separate representation for bondholders. | JCW | 2.00 | | |
| 7/14/86 | Research on LEXIS regarding separate representation. | JJ | 1.10 | 1.10 | Librarian |
| 7/14/86 | Draft memorandum regarding representation of bondholders. | JCW | 3.80 | 3.80 | Purpose of research not identified |
| 7/14/86 | Research. | MLT | 3.80 | | |
| 7/18/86 | Draft interrogatories and request for production of documents; correspond to opposing counsel regarding depositions. | JCW | 2.50 | | |
| 7/25/86 | Confer with Joe Sesler regarding status. | JCW | .30 | | |
| 7/28/86 | Telephone conference with Kathy Hartner. | FAS | .20 | | |
| 7/30/86 | Review pleadings; confer with JCW. | DBG | .60 | .60 | Interoffice communication |
| 7/30/86 | Confer with JCW. | FAS | .70 | .70 | Duplicate charges |
| 7/30/86 | Confer with Kathy Hartner regarding request for documents and interrogatories; confer with Alan Briggs regarding letter to bondholders; review Tonn & Blank's memorandum regarding representation of bondholders. | JCW | 3.60 | | |
| 7/31/86 | Confer with attorneys Budish and Greenwald regarding discovery; draft response to amended complaint. | JCW | 3.60 | | |
| | **PAGE TOTAL** | | 36.6 | 17.7 | |

## APPENDIX 1—Continued

| Date | Description | By | Hours | Comment |
|---|---|---|---|---|
| 8/1/86 | Telephone conference with Kathy Hartner. | FAS | .10 | |
| 8/1/86 | Draft request for production of documents; confer with FAS and Kathy Hartner. | JCW | 1.60 | Interoffice Communication |
| 8/4/86 | Prepare answers to interrogatories; correspond to Joe Sesler; confer with Joe Sesler and Noel Knox regarding depositions; draft letter to bondholders. | JCW | 1.40 | |
| 8/8/86 | Telephone conference with Joe Sesler. | FAS | .40 | |
| 8/8/86 | Draft correspondence to bondholders; prepare memorandum. | JCW | .30 | |
| 8/11/86 | Confer with MLT. | JCW | .80 | Interoffice Communication |
| 8/11/86 | Confer with MLT; review file. | MLT | 1.30 | .80 |
| 8/12/86 | Review documents. | MLT | 4.20 | |
| 8/12/86 | Confer with JCW regarding strategy. | FAS | .20 | Interoffice Communication .20 |
| 8/12/86 | Confer with MLT regarding drafting of motion for summary judgment; confer with Kathy Hartner regarding her deposition. | JCW | 1.60 | .30 |
| 8/13/86 | Research to prepare motion for summary judgment. | MLT | .20 | |
| 8/14/86 | Research regarding places for taking depositions; prepare notices of deposition; confer with attorney Budish regarding deposition scheduling. | JCW | 2.00 | |
| 8/14/86 | Research to prepare motion for summary judgment. | MLT | 2.60 | |
| 8/15/86 | Research. | MLT | 7.20 | Research not identified If SJ, excessive. 7.20 |
| 8/15/86 | Confer with attorney Budish regarding depositions; confer with MLT regarding summary judgment motion. | JCW | .70 | Interoffice Communication .30 |
| 8/16/86 | Draft memo responsive to Tonn & Blank regarding representation of bond holders; correspond to attorney Allison. | JCW | 1.50 | |
| 8/16/86 | Draft summary judgment motion. | MLT | 3.20 | |
| 8/17/86 | Draft summary judgment motion. | MLT | 2.60 | |
| 8/18/86 | Draft and review summary judgment motion. | MLT | 5.70 | |
| | **PAGE TOTAL** | | 37.6 | 9.9 |

-6-

890

| Date | Description | | Hours | | |
|---|---|---|---|---|---|
| 8/19/86 | Review draft of summary judgment motion; confer with MLT regarding same; confer with attorney Budish regarding depositions and other discovery matters. | JCW | 1.50 | .30 | Interoffice Communication |
| 8/19/86 | Review summary judgment motion; confer with JCW regarding same; examine documents. | MLT | 1.40 | 1.00 | |
| 8/20/86 | Confer with attorney Allison regarding memo; confer with Joe Sesler regarding scheduling of depositions. | JCW | .30 | | |
| 8/20/86 | Draft summary judgment motion; research regarding same. | MLT | 4.20 | | |
| 8/21/86 | Review Eversole's answers to interrogatories; confer with MLT regarding summary judgment motion; prepare deposition checklist. | JCW | 2.40 | .30 | Interoffice Communication |
| 8/21/86 | Research; draft summary judgment motion. | MLT | 6.40 | | |
| 8/22/86 | Confer with MLT regarding summary judgment motion; review motion for extension of time filed by Eversole and Tonn & Blank's answers to discovery requests; correspond to Messrs. Landers, Allison and Sesler and Ms. Hartner; review documents provided by Eversole. | JCW | 3.40 | .40 | Interoffice Communication |
| 8/22/86 | Confer with JCW regarding summary judgment motion; draft same. | MLT | 6.40 | .30 | Interoffice Communication |
| 8/23/86 | Prepare for depositions. | JCW | 3.00 | | |
| 8/24/86 | Draft summary judgment motion. | MLT | 5.90 | | |
| 8/25/86 | Prepare for depositions; attend deposition of Ken Eversole. | JCW | 8.00 | 8.00 | Duplicate Services; No explanation of need for two attorneys |
| 8/25/86 | Revise motion; research; attend deposition of Ken Eversole. | MLT | 8.20 | | |
| 8/26/86 | Revise motion and Sesler affidavit; confer with Joe Sesler and Kathy Hartner regarding depositions; prepare for depositions. | JCW | 8.50 | | |
| 8/26/86 | Confer with JCW. | MLT | 1.60 | 1.60 | Interoffice Communication |
| 8/27/86 | Review and cite-check motion for summary judgment. | KLW | 1.00 | .50 | Paralegal |
| **PAGE TOTAL** | | | 62.2 | 12.5 | |

-7-

## APPENDIX 1—Continued

| Date | Initials | Hours | | Description | Note |
|---|---|---|---|---|---|
| 8/27/86 | JCW | 8.50 | 2.0 | Travel to Akron for Stein deposition and status conference; confer with Kathy Hartner and attorney Keating regarding status; prepare for deposition of Mr. Zimmerman of Tonn & Blank. | Travel Time |
| 8/27/86 | MLT | .90 | | Revise motion regarding negligence and breach of fiduciary duty; review motion. | |
| 8/28/86 | JCW | 7.50 | | Attend depositions of Messrs. Stein and Zimmerman. | |
| 8/28/86 | MLT | 5.80 | | Research regarding Fifth Amendment privilege against self-incrimination. | |
| 8/29/86 | JCW | 7.80 | | Attend depositions of Joe Sesler, Kathy Hartner and Tim Adryan; confer with clients regarding depositions. | |
| 8/29/86 | MLT | 6.00 | | Research regarding Fifth Amendment. | |
| 8/30/86 | MLT | 1.20 | | Research regarding Fifth Amendment. | |
| 9/2/86 | FAS | .10 | | Review plan. | — |
| 9/2/86 | JCW | 2.00 | .50 | Confer with attorney Gilligan regarding discovery; confer with MLT regarding research; confer with attorney Landers regarding negotiations with Warren General; draft answers to cross claims of Denman's and Schuler. | Interoffice Communication |
| 9/2/86 | MLT | 6.20 | .50 | Research regarding Fifth Amendment and assignment of promissory note and judgment; confer with JCW. | |
| 9/3/86 | FAS | .40 | .40 | Confer with JCW. | |
| 9/3/86 | JCW | 4.50 | .40 | Confer with MLT; prepare motion to turn over Veres note; confer with attorney Gilligan regarding letter of intent; confer with attorneys Gilligan and Landers regarding hospital negotiations. | Interoffice Communication |
| 9/3/86 | MLT | .70 | | Research regarding assignment of promissory note. | |
| 9/4/86 | JCW | 1.20 | | Revise second motion for summary judgment; confer with attorney Gilligan regarding furniture, promissory note and depositions. | |
| **PAGE TOTAL** | | **52.8** | **3.80** | | |

-8-

APPENDIX 1—Continued

| Date | Description | | | Interoffice Communication |
|------|-------------|---|---|------|
| 9/5/86 | Confer with attorney Landers and Mr. Stein regarding miscellaneous matters; confer with attorneys Budish and Gilligan regarding Hartner deposition; draft order regarding Veres note; confer with Messrs. Stein, Landers, Gilligan and Eversole regarding Veres note, Warren General Hospital and furniture. | JCW | 3.20 | |
| 9/8/86 | Confer with attorney Landers regarding Veres note and depositions; confer with Mike Allison regarding Veres note; confer with Kathy Hartner regarding preparation for deposition and status of negotiations. | JCW | 1.50 | |
| 9/8/86 | Review motion regarding Veres note. | MLT | .30 | |
| 9/9/86 | Attend depositions of Hartner and Eversole; confer with attorneys Greenwald, Landers and Budish. | JCW | 7.00 | |
| 9/10/86 | Draft letter to Judge regarding Warren General negotiations and agreed order regarding Veres note. | JCW | 1.00 | |
| 9/11/86 | Review recently filed pleadings. | JCW | .30 | |
| 9/12/86 | Confer with court officials regarding status conference; confer with attorney Budish regarding motion. | JCW | .30 | |
| 9/13/86 | Review Bank One's cross-claim filed in state court foreclosure. | JCW | .30 | |
| 9/15/86 | Research regarding assignment of promissory note; draft documents. | MLT | 2.10 | |
| 9/16/86 | Review pleadings; confer with attorney Greenwald regarding furniture. | JCW | .30 | |
| 9/16/86 | Draft documents regarding assignment of promissory note; revise same; review file; research. | MLT | 3.60 | |
| 9/17/86 | Confer with Joe Sesler regarding status; review list of furniture. | JCW | .30 | |
| 9/17/86 | Research regarding assignment of note. | MLT | 2.60 | |
| 9/18/86 | Research regarding assignment of judgment; confer with JCW. | MLT | 3.40 | .40 |
| | PAGE TOTAL | | 26.2 | .40 |

## APPENDIX 1—Continued

| Date | Description | | Hours | | |
|---|---|---|---|---|---|
| 9/18/86 | Confer with MLT regarding assignment of Veres judgment; correspond to attorney Landers regarding same. | JCW | .60 | .30 | Interoffice Communication |
| 9/19/86 | Research regarding answer to Bank One's cross-claim; review documents. | MLT | 6.20 | | |
| 9/22/86 | Draft, review and revise answer to Bank One's cross-claim. | MLT | 1.70 | | |
| 9/24/86 | Review Tonn & Blank's memo in opposition to summary judgment motion; correspond to Messrs. Sesler and Allison and Ms. Hartner regarding same; confer with attorneys Keating and Landers regarding status of Warren General negotiations and Veres note. | JCW | 2.00 | | |
| 9/25/86 | Review pleadings; confer with JCW. | DBG | 1.00 | 1.00 | Interoffice Communication Duplicate Services |
| 9/25/86 | Review Zimmerman deposition; confer with attorney Greenwald regarding status; confer with DBG regarding status and briefing of summary judgment motion; confer with attorney Budish regarding status. | JCW | 1.50 | .50 | Interoffice Communication |
| 9/25/86 | Review memo in opposition to motion for summary judgment. | MLT | 1.50 | | |
| 9/26/86 | Review memo in opposition to motion for summary judgment. | FAS | .50 | | |
| 9/30/86 | Confer with Joe Sesler and MLT regarding reply brief on motion for summary judgment; review pleadings. | JCW | 1.00 | .40 | Interoffice Communication |
| 9/30/86 | Draft reply memorandum; confer with JCW; research regarding reply memorandum and promissory estoppel; review motion. | MLT | 8.00 | .40 | Interoffice Communication |
| 10/1/86 | Confer with attorneys Budish and Greenwald regarding status; confer with MLT regarding reply memo; review deposition of Mr. Zimmerman in order to prepare reply memo. | JCW | 3.30 | 1.0 | Interoffice Communication |
| 10/1/86 | Research regarding reply to Tonn & Blank's motion. | MLT | 9.90 | | |
| 10/2/86 | Confer with Joe Sesler and Joe Cook of BancOhio. | FAS | 1.20 | | |
| | **PAGE TOTAL** | | **38.4** | **3.6** | |

-10-

## APPENDIX 1—Continued

| Date | Description | | Hours | | |
|------|-------------|------|------|------|------|
| 10/2/86 | Prepare reply memo and motion for leave; confer with MLT regarding research needed for same; confer with Kathy Hartner, Joe Sesler, Joe Cook and FAS; prepare for hearing. | JCW | 5.70 | 1.0 | Interoffice Communication |
| 10/2/86 | Research regarding promissory estoppel for inclusion in reply memo; confer with JCW; prepare reply memo. | MLT | 9.10 | .6 | Interoffice Communication |
| 10/3/86 | Travel to Akron; attend hearing on motion for possession of project facility; confer with Judge and opposing counsel; confer with Kathy Hartner regarding reserve account; confer with Joe Sesler regarding Warren General Hospital. | JCW | 8.20 | 2.0 | Travel Time |
| 10/5/86 | Prepare summaries and checklists in preparation for meeting; review Tonn & Blank's claim. | JCW | 2.00 | | |
| 10/6/86 | Confer with firm attorney and client. | DBG | 2.40 | 2.40 | Interoffice Communication |
| 10/6/86 | Meeting with Joe Sesler and Mr. Davidson. | FAS | 3.00 | | |
| 10/6/86 | Prepare summaries for meeting; confer with DBG and FAS; confer with attorney Landers and Joe Sesler regarding security; meeting with Elva Smith, Mike Allison, DBG, FAS and Joe Sesler; confer with attorneys Greenwald, Budish and Landers. | JCW | 6.60 | 4.00 | & Duplicate Services |
| 10/6/86 | Confer with FAS. | MLT | .40 | .40 | |
| 10/7/86 | Confer with JCW. | FAS | .50 | .50 | Interoffice Communication |
| 10/7/86 | Confer with attorney Greenwald; correspond to Joe Sesler. | JCW | .50 | | |
| 10/7/86 | Index deposition; prepare document request. | MLT | 4.70 | | |
| 10/8/86 | Review file regarding claim of Second National Bank of Warren; review Clancy security contract; correspond to Joe Sesler regarding same; review file to prepare checklist for trial; correspond to attorney Budish regarding discovery; confer with attorneys Landers, Staib and Greenwald regarding possession of facility furniture; confer with Elva Smith. | JCW | 3.10 | | |
| | **PAGE TOTAL** | | 46.2 | 10.9 | |

## APPENDIX 1—Continued

| Date | Description | | Hours | Interoffice Communication |
|---|---|---|---|---|
| 10/8/86 | Index deposition. | MLT | .40 | |
| 10/9/86 | Confer with JCW. | FAS | .20 | .20 |
| 10/9/86 | Index deposition. | MLT | 1.60 | |
| 10/9/86 | Confer with Joe Sesler and Elva Smith regarding revisions to letter; review Eversole financial records; draft letter to counsel regarding loan; confer with attorney Landers' office regarding financials. | JCW | 2.50 | |
| 10/10/86 | Confer with Debbie of Clerk's office regarding scheduling; confer with attorney Greenwald regarding Eversole financials; confer with attorneys Budish and Staib regarding status and proceedings to prepare for trial. | JCW | .80 | |
| 10/11/86 | Telephone conference with Dick Kane; review indenture. | FAS | 1.00 | .40 Interoffice Communication |
| 10/13/86 | Revise deposition index; research regarding Section 327(c). | MLT | 3.60 | |
| 10/14/86 | Confer with attorneys Landers and Greenwald, Joe Sesler and MLT; review Tonn & Blank's motions. | JCW | 1.00 | |
| 10/14/86 | Review; review pleadings and motions. | MLT | 3.80 | |
| 10/15/86 | Confer with JCW; review purchase contract. | FAS | .50 | .20 |
| 10/15/86 | Review draft agreement with Warren General; confer with PAP and FAS regarding health law aspects; confer with attorney Budish regarding proposed settlement and documents; confer with Joe Sesler and Kathy Hartner regarding documents and trial; review Second National Bank's mortgage lien; confer with attorney Landers regarding Warren General contract and Stein's assets; confer with Judge regarding settlement; review financial statements and information regarding collateral; confer with MLT regarding trial preparation. | JCW | 7.70 | 1.70 Interoffice Communication |
| 10/15/86 | Confer with JCW and BWM; review SHPDA files; review purchase agreement with Warren General; research law; prepare checklist; review correspondence from SHPDA files; telephone call to Joel Mariotti at SHPDA. | PAP | 2.30 | 1.00 |
| | **PAGE TOTAL** | | **25.4** | **3.5** |

-12-

896

| Date | Description | | | | |
|---|---|---|---|---|---|
| 10/15/86 | Confer with PAP and MSG. | BWM | .20 | .20 | Interoffice Communication |
| 10/15/86 | Index deposition; confer with JCW regarding trial preparation; review contract; research trial strategies; prepare documents; reorganize index. | MLT | 7.70 | .70 | |
| 10/16/86 | Confer with JCW; draft memorandum. | PAP | .50 | .50 | |
| 10/16/86 | Review information regarding assets of Stein and Eversole; confer with Joe Sesler and FAS regarding Eversole; draft motion for continuance; confer with attorneys Budish and Landers and Messrs. Sesler and Stein. | JCW | 5.60 | .50 | Interoffice Communication |
| 10/16/86 | Confer with JCW. | JKL | .50 | .40 | |
| 10/16/86 | Review documents; confer with JCW; review memorandum; index depositions; draft documents; confer with JCW regarding trial preparation and settlement potential. | MLT | 10.10 | 1.10 | |
| 10/17/86 | Confer with JCW regarding trial preparation and settlement potential. | FAS | .60 | .60 | |
| 10/17/86 | Confer with attorneys Davidson, Smith, Knight, Landers, Budish, Staib, FAS and MLT and Mr. Sesler; review order and subpoenas; prepare for trial. | JCW | 7.50 | .50 | Interoffice Communication |
| 10/17/86 | Confer with JCW; review memo. | PAP | .30 | .30 | |
| 10/17/86 | Index depositions of Hartner, Eversole and Stein; review pleadings and index; confer with JCW; review brief. | MLT | 10.10 | 1.00 | |
| 10/18/86 | Prepare checklist regarding resolution of matters via sale to Warren General; prepare for trial; confer with Joe Sesler and FAS regarding same. | JCW | 5.00 | | |
| 10/18/86 | Prepare for trial. | MLT | 4.30 | 2.3 | Duplicate Services; Excessive |
| 10/19/86 | Confer firm attorneys regarding security for advance to Gillette; review agreement with Warren General. | FAS | 1.50 | 1.0 | Interoffice Communication |
| 10/19/86 | Confer with firm attorneys regarding security structure; confer with attorney Knight regarding security problems and status; prepare for trial. | JCW | 5.00 | 1.0 | |
| 10/19/86 | Prepare for trial. | MLT | 5.50 | 2.5 | Duplicate Services; Excessive |
| | PAGE **TOTAL** | | 64.4 | 12.2 | |

-13-

## APPENDIX 1—Continued

| Date | Description | | | | | Notes |
|------|-------------|---|---|---|---|-------|
| 10/20/86 | Telephone call to Preston Gaddis regarding airplane title. | FAS | .20 | | | |
| 10/20/86 | Prepare for and attend trial proceedings; negotiate settlement; confer with opposing counsel and Joe Sesler; attend jury selection. | JCW | 8.00 | | | |
| 10/20/86 | Confer with Joe Sesler; attend settlement negotiations and voir dire. | MLT | 8.00 | JCW | 8.00 | Duplicate Services; No explanation for need for two attorneys |
| 10/21/86 | Meeting with attorney Landers regarding Stein collateral; confer with attorney Staib regarding settlement agreement; review documents at Trumbull County Recorder's office; meeting with attorneys Landers and Zuzulo regarding title problem; confer with attorney Landers regarding furniture. | JCW | 8.00 | | | |
| 10/21/86 | Review and organize file. | MLT | .30 | | | |
| 10/21/86 | Telephone call to attorney Gaddis; telephone call to JCW regarding settlement. | FAS | .70 | | .40 | Interoffice Communication |
| 10/22/86 | Meeting with JCW and JKL; confer with JCW regarding settlement. | FAS | 1.50 | | 1.50 | Interoffice Communication |
| 10/22/86 | Confer with PAP and attorney Landers regarding Certificate of Need; confer with attorney Gilligan regarding Eversole furniture; confer with FAS and JKL regarding drafting of settlement documents; confer with attorney Budish, Judge Dowd, Joe Sesler and attorney Knight regarding scheduling. | JCW | 6.40 | | 1.00 | |
| 10/22/86 | Meeting with JCW and FAS; draft promissory note and security agreement. | JKL | 3.00 | | 1.00 | |
| 10/22/86 | Draft trial brief. | MLT | 8.30 | | | |
| 10/22/86 | Review correspondence from attorney Landers; confer with JCW; telephone call to attorney Landers. | PAP | .80 | | .30 | |
| 10/23/86 | Confer with Joe Sesler, Elva Smith and attorney Knight; revise settlement agreement; confer with attorneys Landers, Budish and Staib; prepare trial brief. | JCW | 6.00 | | | |
| **PAGE TOTAL** | | | 51.2 | | 12.2 | |

APPENDIX 1 —Continued

| Date | Description | | Hours | Interoffice Communication |
|---|---|---|---|---|
| 10/23/86 | Review settlement documents. | PAS | .50 | |
| 10/23/86 | Confer with JCW. | PAP | .30 | .30 |
| 10/23/86 | Draft promissory note, mortgage and security agreement. | JKL | 5.20 | |
| 10/23/86 | Draft trial brief. | MLT | 2.00 | |
| 10/24/86 | Confer with attorney Landers regarding loan commitment and settlement; confer with attorney Gilligan regarding furniture and collateral; confer with Joe Sesler and attorney Knight regarding settlement agreement; revise same; confer with attorneys Budish and Gilligan and Judge's Clerk regarding hearing on motions, etc.; correspond to attorneys Budish and Gilligan regarding same. | JCW | 6.00 | |
| 10/24/86 | Prepare mortgage; telephone call to Tennessee counsel; correspond to same; confer with JRG. | JKL | 5.50 | .50 |
| 10/25/86 | Draft agreement. | JKL | 2.50 | |
| 10/27/86 | Confer with JKL regarding security agreement. | PAS | .50 | .50 |
| 10/27/86 | Confer with attorneys Landers, Budish and Gilligan and Judge Shaker regarding state court foreclosure. | JCW | 2.50 | |
| 10/27/86 | Prepare agreement; confer with PAS and JCW. | JKL | 2.00 | 1.00 |
| 10/28/86 | Prepare agreement; confer with JCW; telephone call to local counsel. | JKL | 2.00 | .50 |
| 10/28/86 | Confer with Joe Sesler regarding status and Eversole collateral; confer with attorney Budish. | JCW | .60 | |
| 10/29/86 | Confer with Joe Sesler and Elva Smith regarding final revisions to settlement agreement; confer with attorneys Landers and Budish regarding same. | JCW | 2.00 | |
| 10/29/86 | Prepare security agreements, notes, etc. | JKL | 7.50 | |
| 10/30/86 | Revise settlement agreement; confer with Joe Sesler and attorneys Budish and Gilligan regarding furniture and collateral. | JCW | 2.40 | |
| | **PAGE TOTAL** | | 41.5 | 2.8 |

-15-

## APPENDIX 1 —Continued

| Date | | Description | | | |
|---|---|---|---|---|---|
| 10/30/86 | JKL | Draft agreement; correspond to Schottenstein; prepare documents; telephone call to Tennessee counsel; confer with JCW. | 2.50 | .50 | Interoffice Communication |
| 10/31/86 | JCW | Confer with Joe Sesler and Bill Clancy regarding delivery of furniture; confer with attorney Landers; review attorney Gilligan's changes to settlement agreement; confer with JKL regarding Tennessee farm; confer with Joe Sesler regarding Eversole collateral; confer with attorney Gilligan regarding same. | 4.20 | .30 | Interoffice Communication |
| 10/31/86 | JKL | Prepare documents; telephone calls to Tennessee counsel; confer with JCW. | 2.30 | .30 | Interoffice Communication |
| 11/1/86 | JKL | Prepare documents. | 2.00 | 2.00 | No identification of document |
| 11/3/86 | JKL | Review correspondence from Tennessee counsel; prepare documents, including deed of trust; telephone calls to Mr. Hoffman regarding insurance, Tennessee counsel and Schottenstein; confer with JCW. | 3.20 | .50 | Interoffice Communication |
| 11/4/86 | JCW | Confer with attorney Gilligan regarding Eversole advance; confer with Joe Sesler, Elva Smith and attorney Knight regarding settlement agreement; confer with attorney Budish regarding collateral; confer with attorneys Landers, Budish and Gilligan regarding settlement agreement. | 3.60 | | |
| 11/4/86 | JKL | Prepare Schottenstein's changes; review same. | 4.00 | | |
| 11/6/86 | JCW | Confer with Joe Sesler and attorney Knight regarding revisions to Eversole advance documents; revise same; confer with attorney Landers and Messrs. Sesler and Knox regarding insurance; confer with Mr. Hoffman regarding Eversole loan documents. | 2.90 | | |
| 11/7/86 | JCW | Prepare final Eversole documents; confer with JKL regarding same; correspond to attorney Knight and Messrs. Knox, Denz and Budish regarding insurance. | .50 | .20 | Interoffice Communication |
| 11/7/86 | JKL | Prepare for closing; prepare written resolutions; telephone calls to bank counsel; confer with JCW. | 7.70 | .20 | Interoffice Communication |
| **PAGE TOTAL** | | | 32.9 | 4.0 | |

-16-

## APPENDIX 1—Continued

| Date | Description | | Hours | Hours | Notes |
|------|-------------|---|-------|-------|-------|
| 11/8/86 | Prepare for closing; prepare documents; confer with JCW regarding same. | JKL | 3.00 | 1.0 | Interoffice Communication<br>No designation of documents |
| 11/10/86 | Confer with JKL, attorneys Budish and Gilligan and Messrs. Zimmerman and Knox regarding insurance; meeting with Eversole regarding loan documents; confer with JKL; correspond to attorney Oscar regarding Tonn & Blank's comments; correspond to attorneys Landers, Budish and Gilligan. | JCW | 3.60 | 1.0 | Interoffice Communication |
| 11/10/86 | Telephone call to Noel Knox. | FAS | .30 | | |
| 11/10/86 | Prepare for and attend closing; telephone calls to various parties; confer with JCW; research regarding UCC law; prepare documents. | JKL | 8.50 | 2.0 | Interoffice Communication;<br>No designation of documents |
| 11/11/86 | Confer with JCW regarding litigation strategy. | FAS | .20 | .20 | Interoffice Communication |
| 11/11/86 | Send notifications; confer with JCW. | JKL | 2.00 | 1.00 | |
| 11/12/86 | Confer with attorney Budish regarding status; prepare telegram to attorney Landers regarding plumbing at facility; confer with Noel Knox regarding plumbing at facility. | JCW | 1.00 | | |
| 11/13/86 | Confer with Messrs. Knox and Sesler regarding utilities; confer with attorney Gilligan regarding furniture and equipment. | JCW | .50 | | |
| 11/13/86 | Telephone call from and correspond to American Quarter Horse Association. | JKL | .50 | | |
| 11/14/86 | Confer with attorney Budish regarding status. | JCW | .30 | | |
| 11/17/86 | Telephone call to Dick Kane and John Cook regarding Warren General transaction. | FAS | 1.20 | | |
| 11/17/86 | Confer with attorneys Landers, FAS and Budish and Messrs. Sesler and Knox regarding settlement status and Warren General Hospital. | JCW | 1.00 | | |
| 11/17/86 | Confer with JCW. | PAP | .30 | .30 | Interoffice Communication |
| **PAGE TOTAL** | | | 22.4 | 5.5 | |

## APPENDIX 1 —Continued

| Date | Description | | | | Note |
|---|---|---|---|---|---|
| 11/18/86 | Confer with JCW regarding strategy; telephone call to attorney Cook regarding Warren General purchase contract. | FAS | .80 | .20 | |
| 11/18/86 | Confer with PAP and FAS; confer with with Joe Sesler regarding utilities; draft Warren General provisions regarding Medicare certification; confer with and correspond to attorney Landers regarding same; confer with attorney Budish regarding status. | JCW | 1.40 | .20 | Interoffice Communication |
| 11/18/86 | Confer with JCW and FAS. | PAP | .20 | .20 | |
| 11/19/86 | Correspond to Joe Sesler regarding Stein requisition forms, etc.; confer with attorney Gilligan regarding status. | JCW | .50 | | |
| 11/20/86 | Confer with attorney Landers regarding Warren General and utilities. | JCW | .50 | | |
| 11/20/86 | Review letters and organize files; telephone call to Tim Hoffman. | JKL | .80 | | |
| 11/21/86 | Correspond to attorneys Landers and Gilligan regarding disbursements. | JCW | .30 | | |
| 11/21/86 | Confer with JCW. | PAP | .20 | .20 | Interoffice Communication |
| 11/24/86 | Confer with JCW regarding Warren General contract. | FAS | .70 | .70 | Interoffice Communication |
| 11/24/86 | Confer with attorney Budish regarding access to facility; confer with FAS regarding status; | JCW | .30 | .20 | |
| 11/24/86 | Telephone call with Tim Hoffman. | JKL | .20 | | |
| 11/25/86 | Confer with attorney Cook regarding status of Warren General; confer with attorney Budish regarding kitchen equipment and furniture; correspond to attorneys Gilligan and Landers regarding furniture and Warren General; confer with Kathy Hartner and FAS regarding Norwood. | JCW | 1.90 | .20 .20 | Interoffice Communication |
| 11/25/86 | Confer with JCW regarding certificate of Need. | PAP | .20 | | Interoffice Communication |
| 12/1/86 | Telephone call to Motor Vehicle Bureau and Schottenstein; confer with JCW; correspond to counsel. | JKL | 1.20 | .50 | Interoffice Communication |
| **PAGE TOTAL** | | | 9.2 | 2.6 | |

-18-

## APPENDIX 1—Continued

| Date | Description | | | | |
|------|-------------|---|------|-----|---|
| 12/1/86 | Confer with attorneys Budish, Boone, Gilligan and JKL and Mr. Sesler regarding status of settlement agreement; review same regarding action to be taken. | JCW | 1.30 | .20 | Interoffice Communication |
| 12/2/86 | Confer with attorneys Landers and PAS regarding status. | JCW | .40 | .20 | Interoffice Communication |
| 12/2/86 | Telephone calls to Motor Vehicle Bureau and Schottenstein; send certificate for filing. | JKL | 1.00 | | |
| 12/3/86 | Review agreement; call to Motor Vehicle Bureau. | JKL | .50 | | |
| 12/4/86 | Telephone call to attorney Cook. | FAS | .10 | | |
| 12/5/86 | Confer with JCW. | FAS | .20 | | |
| 12/5/86 | Review letters from Warren General and Department of Health; confer with Joe Sesler regarding same. | JCW | .50 | .20 | Interoffice Communication |
| 12/5/86 | Confer with attorneys Staib, Keating and FAS and Mr. Stein regarding status of Warren General transaction and settlement. | JCW | 2.00 | .20 | Interoffice Communication |
| 12/6/86 | Confer with attorney Lorenzetti and Mr. Stein regarding Warren General transaction. | JCW | .40 | | |
| 12/8/86 | Confer with attorney Gilligan regarding status of furniture and equipment. | JCW | .30 | | |
| 12/10/86 | Confer with attorney Keating regarding status of Warren General transaction; confer with Mr. Sesler regarding same; confer with Mr. Sniegocki of Swink & Co. | JCW | .50 | | |
| 12/11/86 | Confer with attorneys Lorenzetti and Staib and Mr. Stein regarding status; confer with FAS and Joe Sesler regardidng same. | JCW | 1.00 | .20 | Interoffice Communication |
| 12/12/86 | Confer with JCW; telephone call to Barbara Knight and Joe Sesler regarding resumption of construction. | FAS | 1.10 | .20 | Interoffice Communication |
| | **PAGE TOTAL** | | 9.2 | 1.2 | |

## APPENDIX 1—Continued

| Date | Description | | | Note |
|---|---|---|---|---|
| 12/12/86 | Confer with Mr. Sesler and attorney Knight regarding budget expenditures and considerations; confer with attorney Gilligan regarding furniture; review file to prepare checklist; confer with attorneys Lorenzetti, Budish and Staib regarding resumption of work on facility. | JCW | 2.50 | |
| 12/17/86 | Confer with attorney Keating regarding status of Warren General matter. | JCW | .30 | |
| 12/18/86 | Confer with attorneys Lorenzetti and Staib regarding status; confer with Mr. Sesler and attorney Knight regarding same. | JCW | 1.00 | |
| 12/22/86 | Confer with attorneys Gilligan and Staib regarding status; review file to prepare for trip to Warren. | JCW | 1.50 | |
| 12/22/86 | Review assignment documents. | MLT | .70 | |
| 12/23/86 | Travel to Warren to examine nursing home and meet with attorney Lorenzetti and Mr. Stein; travel to court clerk to file Veres assignment; travel to court clerk regarding Am-Care lawsuit; travel to Recorder's office regarding Veres real estate; confer with attorneys Lorenzetti and Gilligan; correspond to Messrs. Sesler and Stein and attorney Knight. | JCW | 7.70 | Travel Time 3.0 |
| 12/24/86 | Correspond to Messrs. Sesler, Stein and Sniegocki and attorneys Knight and Gilligan; confer with attorney Gilligan. | JCW | 1.50 | |
| 12/24/86 | Prepare power of attorney; telephone call to Division of Motor Vehicles. | JKL | 1.00 | |
| 12/24/86 | Confer with JCW. | BWM | .30 | Interoffice Communication .30 |
| 12/29/86 | Confer with Joe Sesler regarding status and alternatives. | JCW | .30 | |
| 12/29/86 | Review files; telephone calls to Division of Motor Vehicles; travel to Division of Motor Vehicles; confer with Division officials and attorney. | JKL | 2.00 | |
| 12/29/86 | Telephone call to Ohio Department of Health; review correspondence. | BWM | .50 | |
| 12/29/86 | Review correspondence. | MLT | .20 | |
| | **PAGE TOTAL** | | 19.5 | 3.3 |

-20-

## APPENDIX 1—Continued

| Date | Description | | Hours | Interoffice Communication |
|---|---|---|---|---|
| 12/29/86 | Confer with BWM. | MSG | .50 | .50 |
| 12/30/86 | Confer with Mr. Sesler and FAS; correspond to Mr. Sniegocki and attorney Staib; confer with attorneys Gilligan and Staib and Mr. Eversole regarding status. | JCW | 1.20 | |
| 12/30/86 | Telephone call to attorney; review files regarding perfection; correspond to attorney. | JKL | 1.50 | |
| 12/31/86 | Confer with JCW regarding status. | FAS | .30 | .30 |
| 12/31/86 | Confer with FAS and BWM regarding Certificate of Need; confer with Kathy Hartner regarding requisitions. | JCW | .30 | .20 |
| 12/31/86 | Confer with JCW; telephone call to Ohio Department of Health. | BWM | .20 | .10 |
| **1987** | | | | |
| 1/2 | Conference with Messrs. Sesler and Staib regarding status. | JCW | .3 | |
| 1/5 | Conference with BWM regarding Department of Health status; correspondence with clerk of courts regarding Stein assignment; conference with Mr. Sniegocki of Swink regarding potential purchasers. | JCW | .9 | .30 |
| 1/6 | Conference with JCW regarding SHPDA. | FAS | .2 | .20 |
| 1/6 | Conference with PAP regarding cost overrun issue; conference with Messrs. Sesler and Knox; conference with Mr. Boyce. | JCW | .8 | .20 |
| 1/6 | Conference with JCW regarding CON matters. | PAP | .5 | .50 |
| 1/6 | Review of correspondence. | MLT | .1 | |
| 1/7 | Conference with Mr. Sesler regarding addendum; review file to prepare for meeting with Mr. Boyce. | JCW | .7 | |
| 1/7 | Review of law regarding cost overruns. | PAP | .2 | |
| 1/8 | Preparation for and meeting with Mr. Boyce regarding cost of project; conference with attorney Gilligan regarding cost of project; conference with Mr. Sesler regarding need for additional funds. | JCW | 3.8 | |
| | **PAGE TOTAL** | | 11.5 | 2.3 |

-21-

## APPENDIX 1—Continued

| Date | Description | Init. | Hours | | Notes |
|------|-------------|-------|-------|------|-------|
| 1/8/87 | Meeting with Mr. Boyce regarding cost overrun; conference with JCW. | PAP | 1.4 | .40 | Interoffice Communication |
| 1/9 | Review Tim Hoffman correspondence. | JKL | 1.0 | | |
| 1/11 | Review documents and organize files. | MLT | .5 | | |
| 1/12 | Conference with Mr. Boyce regarding status; correspondence with attorney Gallo regarding Veres judgment. | JCW | .5 | | |
| 1/13 | Review file regarding disbursements; correspondence with Messrs. Stein, Gilligan, and Lorenzetti regarding same; conference with Mr. Sniegocki and attorney for Swink & Co. regarding status. | JCW | 1.2 | | |
| 1/14 | Conference with Ms. Hartner and Mr. Sesler regarding status of accounts and recent developments. | JCW | .5 | | |
| 1/16 | Review cost analysis of James Boyce; review letter from attorney Gallo regarding Veres note. | JCW | .5 | | |
| 1/16 | Review of opinion. | JKL | .3 | | |
| 1/20 | Conference with attorneys Staib, Budish, Lorenzetti, and Gilligan regarding construction; conference with Mr. Boyce regarding CON; conference with Mr. Sniegocki of Swink Co.; review state court foreclosure file to prepare for trial. | JCW | 2.0 | | |
| 1/21 | Conference with Atty. Knight and Mr. Sesler regarding CON and state court foreclosure matters. | JCW | .9 | | |
| 1/21 | Conference with JCW. | JKL | .2 | .20 | Interoffice Communication |
| 1/21 | Travel to SHPDA and review files. | MSG | .2 | .10 | Paralegal |
| 1/22 | Conference with attorneys Staib, Schubert, and Gilligan regarding state court foreclosure suit; conference with Mr. Boyce regarding CON; conference with PAP regarding CON. | JCW | 1.0 | .40 | Interoffice Communication |
| 1/22 | Conference with JPW. | PAP | .4 | .40 | |
| **PAGE TOTAL** | | | **10.6** | **1.5** | |

-22-

## APPENDIX 1—Continued

| Date | Description | | | | |
|------|-------------|---|----|-----|-----|
| 1/23/87 | Research regarding jurisdiction of state court regarding foreclosure suit; conference with attorney Staib regarding same; conference with Mr. Sesler and Ms. Knight regarding trial; preparation for trial. | JCW | 3.6 | | |
| 1/23 | Telephone conference with Ms. Knight; preparation for closing. | JKL | 3.0 | | |
| 1/24 | Preparation for trial in state court foreclosure. | JCW | 3.4 | | |
| 1/26 | Preparation for trial; revisions to trial brief; conference with attorney Staib regarding trail; conference with Mr. Sesler to prepare for trial and regarding Capital assets offer. | JCW | 2.8 | | |
| 1/26 | Correspondence; telephone conference; preparation of bible. | JKL | 1.0 | | |
| 1/26 | Conference with JCW. | MLT | .2 | .20 | Interoffice Communication |
| 1/26 | Review and cite check brief. | KLW | .6 | .30 | Paralegal |
| 1/27 | Preparation for trial; review and obtain documents from recorder's office and Common Pleas docket; conference with Messrs. Budish, Staib, Schubert, Rudloff, and Bulenza; travel with Mr. Schubert and Judge to facility; conference with Mr. Sesler regarding trial; correspondence with attorneys Knight and Staib. | JCW | 8.5 | | |
| 1/27 | Travel to SHPDA offices; review of files and documents. | MSG | .4 | .20 | Paralegal |
| 1/28 | Conference with PAS regarding Capital Assets offer; conference with attorney Gilligan regarding status of matters; conference with attorney Lorenzotti regarding Veres property; conference with Messrs. Gilligan and Eversole regarding Capital Assets; conference with Mr. Sesler regarding status; conference with attorney Staib. | JCW | 2.2 | .90 | Interoffice Communication |
| 1/28 | Conference with JCW regarding proposal to purchase project. | PAS | .9 | .90 | |
| 1/29 | Conference with JCW regarding proposed offer; telephone conference with Mr. Sesler. | PAS | .9 | .40 | Interoffice Communication |
| **PAGE TOTAL** | | | **27.5** | **2.90** | |

-23-

## APPENDIX 1—Continued

| Date | Description | | Hours | | Type |
|------|-------------|-----|-----|-----|------|
| 1/29/87 | Travel to SHPDA offices; review of files and documents. | MSG | .3 | .20 | Paralegal |
| 1/30 | Conference with Messrs. Sesler and Smith and Ms. Knight regarding status and offer to purchase; conference with DBG; conference with attorney Staib regarding inquiry from Department of Health and other matters. | JCW | 1.7 | .20 | Interoffice Communication / |
| 1/30 | Review documents from SHPDA file. | BWH | .1 | | |
| 2/2 | Review of documents; conference with Ms. Knight and Messrs. Sesler and Knox. | DBG | 3.8 | | |
| 2/2 | Conference with DBG to prepare for meeting; conference with Mr. Boyce regarding certificate of need; conference with Ms. Knight and Messrs. Sesler and Knox regarding Capital Assets and status. | JCW | 2.3 | .20 | Interoffice Communication |
| 2/3 | Conference with JCW regarding indenture. | FAS | .3 | | |
| 2/3 | Conference with FAS; correspondence with Atty. Gilligan regarding Andrews meeting. | JCW | .3 | .30 | Interoffice Communication |
| 2/3 | Review of correspondence. | MLT | .1 | .10 | |
| 2/5 | Review of documents; conference with firm attorney. | DBG | .7 | .30 | Interoffice Communication |
| 2/5 | Conference with Mr. Sniegocki regarding status and Capital Assets. | JCW | .2 | | |
| 2/5 | Conference with JCW. | PAP | .3 | .30 | |
| 2/6 | Conference with Mr. Sesler regarding Capital Assets and CON completion of project; conference with Mr. Boyce regarding CON; conference with Mr. Gilligan regarding Capital Assets offer. | JCW | 1.0 | | |
| 2/6 | Travel to SHPDA and review of files. | MSG | .4 | .20 | Paralegal |
| 2/9 | Conference with Mr. Sesler regarding meeting with Stein & Eversole. | JCW | .2 | | |
| 2/12 | Conference with Mr. Sesler regarding expenses; conference with Messrs. Gilligan, Boyce, and Sniegocki regarding status. | JCW | .6 | | |
| 2/13 | Conference with Messrs. Sesler and Boyce regarding status. | JCW | .3 | | |
| | **PAGE TOTAL** | | 12.6 | 1.8 | |

-24-

# APPENDIX 1—Continued

| Date | Description | Init. | Hours | Disputed | Category |
|---|---|---|---|---|---|
| 2/17/87 | Review of SHPDA files. | MSG | .2 | .10 | Paralegal |
| 2/18 | Preparation of checklist; conference with MLT regarding visit to facility. | JCW | .5 | | |
| 2/18 | Conference with JCW. | MLT | .1 | .10 | Interoffice Communication |
| 2/19 | Travel to inspect nursing home. | MLT | 2.1 | | |
| 2/20 | Conference with Messrs. Gilligan and Sniegocki regarding status; conference with BWM. | JCW | .3 | | |
| 2/20 | Conference with JCW. | MLT | .1 | .10 | Interoffice Communication |
| 2/23 | Conference with Mr. Boyce regarding Department of Health matters; conference with BWM. | JCW | .3 | .10 | |
| 2/23 | Review of file; conference with JCW; telephone conference with SHPDA. | BWM | .5 | .10 | Interoffice Communication |
| 2/24 | Preparation for and meeting with Ms. Knight and Messrs. Sesler, Knox, and Eversole; conference with PAP regarding CON matters. | JCW | 2.1 | | |
| 2/24 | Conference with JCW. | PAP | .3 | .10 | Interoffice Communication |
| 2/24 | Preparation of memorandum regarding status of nursing home site. | MLT | .3 | .10 | |
| 2/24 | Review of SHPDA files. | MSG | .4 | .30 | Paralegal |
| 2/25 | Conference with BWM regarding CON matters. | JCW | .3 | .30 | |
| 2/25 | Conference with JCW; review CON matters. | BWM | .5 | .20 | Interoffice Communication |
| 2/27 | Conference with attorney Budish regarding status and course of action. | JCW | .4 | .30 | |
| 3/2 | Travel to SHPDA and review of files. | MSG | .6 | .30 | Paralegal |
| 3/4 | Conference with BWM; review Department of Health matters. | JCW | .4 | .30 | |
| 3/4 | Conference with JCW and MSG. | BWM | .1 | .10 | Interoffice Communication |
| 3/5 | Confer with Messrs. Sesler and Blank regarding status and change orders; review file and change orders. | JCW | .8 | .10 | |
| 3/5 | Conference with MSG. | BWM | .1 | .10 | Interoffice Communication |
| 3/5 | Review SHPDA files; conference with BWM. | MSG | .4 | .20 | Interoffice Communication / Paralegal |
| **PAGE TOTAL** | | | **10.8** | **2.9** | |

## APPENDIX 1—Continued

| Date | Description | | | | |
|------|-------------|-----|-----|-----|---|
| 3/6/87 | Conference with Mr. Blank regarding completion problems; review Tonn & Blank's motion for judgment; conference with Messrs. Knox and Sesler regarding agenda. | JCW | 1.0 | | |
| 3/6 | Telephone conference with Ohio Department of Health; conference with JCW. | BWM | .2 | .10 | Interoffice Communication |
| 3/9 | Review letter, etc. from Mr. Blank; correspondence with Mr. Sesler; conference with Mr. Sesler regarding meeting with Mr. Eversole; conference with attorney Gilligan; review file regarding Tonn & Blank's motion for judgment; conference with BWM regarding Department of Health matters; correspondence with Judge Dowd; conference with attorney Budish regarding status and scheduling of hearing on motion. | JCW | 1.7 | .60 | |
| 3/9 | Conference with JCW; correspondence with Mr. Hoffman. | JKL | 1.0 | .50 | Interoffice Communication |
| 3/9 | Telephone conference with Ohio Department of Health; conference with JCW. | BWM | .2 | .10 | |
| 3/10 | Conference with Mr. Eversole regarding Department of Health and project completion status; conference with Mr. Sesler. | JCW | .4 | | |
| 3/11 | Telephone conference with Mr. Sesler. | FAS | .3 | | |
| 3/11 | Conference with Mr. Sesler regarding Department of Health setting of hearing; conferences with FAS, PAP, and BWM; conference with attorney Gilligan. | JCW | 1.2 | .50 | |
| 3/11 | Conference with JCW and BWM; telephone conference with Mr. Marlotti. | PAP | 1.0 | .50 | Interoffice Communication |
| 3/11 | Conference with JCW and PAP. | BWM | .5 | .50 | Paralegal |
| 3/11 | Review of SHPDA files. | MSG | .3 | .20 | |
| 3/16 | Telephone conference with Mr. Knox. | FAS | .2 | | |
| 3/16 | Conference with Judge Dowd's law clerk; conference with Messrs. Sesler and Gilligan regarding hearing and status. | JCW | 1.0 | | |
| 3/16 | Analysis of CON issue. | PAP | .3 | | |
| 3/16 | Telephone conference with Ohio Department of Health; conference with JCW. | BWM | .2 | .10 | Interoffice Communication |
| 3/17 | Telephone conference with Mr. Sesler. | FAS | .2 | | |

-26-

**PAGE TOTAL**    9.7    3.1

## APPENDIX 1—Continued

| Date | Description | | Hours | | Category |
|------|-------------|------|------|------|----------|
| 3/17/87 | Conference with Messrs. Sesler, Boyce, and Budish. | JCW | 1.6 | | |
| 3/18 | Preparation of draft entry; preparation for hearing. | JCW | 1.5 | | |
| 3/18 | Review SHPDA file. | MSG | .4 | .20 | Paralegal |
| 3/19 | Preparation of documents for hearing; conference with Judge Dowd's law clerk; conference with TRM; review and finalize documents. | JCW | 3.2 | | |
| 3/19 | Conference with JCW; preparation for hearing. | TRM | 4.0 | .50 .50 | Interoffice Communication |
| 3/20 | Travel to and representation at hearing; telephone conference with client. | TRM | 8.7 | 2.00 | Travel Time |
| 3/20 | Review of SHPDA files. | MSG | .2 | .10 | Paralegal |
| 3/20 | Review of application at SHPDA office; preparation of flow chart. | BSC | .4 | .20 | Paralegal |
| 3/21 | Preparation of flow chart. | BSC | .2 | .10 | Paralegal |
| 3/23 | Review of application at SHPDA office. | BSC | .3 | .20 | Paralegal |
| 3/25 | Review of correspondence. | TRM | .1 | | |
| 3/30 | Conference with JCW. | FAS | .6 | .60 | Interoffice Communication |
| 3/30 | Review order regarding 3/20 hearing; conference with TRM; review documents filed by Tonn & Blank; conference with Mr. Sesler. | JCW | 1.0 | .20 | Interoffice Communication |
| 3/30 | Telephone conference with client. | TRM | .1 | | |
| 3/30 | Review of pleadings. | MLT | .2 | | |
| 3/31 | Conference with Mr. Sniegocki; conference with Mr. Sesler and FAS regarding payment or letter to bondholders. | JCW | .3 | | |
| 3/31 | Conference with JCW. | BSC | .2 | .20 | Interoffice Communication |
| 4/1 | Conference with JCW regarding letter to bondholders. | FAS | .5 | .50 | Interoffice Communication |
| **PAGE TOTAL** | | | 23.5 | 5.3 | |

## APPENDIX 1 —Continued

| Date | Description | | | | |
|------|-------------|----|-----|-----|-----|
| 4/1/87 | Preparation of memorandum regarding entry of judgment and supporting affidavits; conference with Mr. Boyce regarding health department matters; conferences with Ms. Knight and Messrs. Sesler and Smith; conferences with MYS attorneys; revisions to letter to Judge Dowd; preparation of letter to bondholders and notice of default regarding Eversole note; review of Eversole note. | JCW | 6.5 | | |
| 4/1 | Conference with JCW. | TRM | .2 | | |
| 4/1 | Review file at SHPDA; conference with JCW. | BSC | .3 | .20 | Interoffice Communication |
| 4/2 | Review correspondence to bondholders. | FAS | .6 | .30 | Paralegal; Interoffice |
| 4/2 | Preparation and finalization of post-hearing memorandum; conference with Mr. Sesler. | JCW | .3 | | |
| 4/3 | Telephone conference with Mr. Sesler. | FAS | .3 | | |
| 4/3 | Review Stein's affidavit; conferences with attorneys Velie and Staib; conference with Mr. Sesler. | JCW | .5 | | |
| 4/3 | Review of file at SHPDA. | BSC | .3 | | |
| 4/6 | Meeting with Messrs. Sesler and Knox; conference with JCW. | FAS | .4 | .40 | Duplicate Services |
| 4/6 | Meeting with Messrs. Sesler and Knox. | JCW | .3 | | |
| 4/6 | Conference with JCW. | BWM | .1 | .10 | Interoffice Communication |
| 4/7 | Conference with attorneys Budish and Staib regarding possibility of joint pursuit of judgment. | JCW | .2 | | |
| 4/9 | Telephone conference with client; conference with JCW; review correspondence to client; review of file. | JKL | 1.0 | .10 | Interoffice Communication |
| 4/9 | Review of file at SHPDA. | BSC | .2 | | |
| 4/10 | Conference with Mr. Sniegocki; review of recently-filed documents. | JCW | .3 | | |
| 4/13 | Review ruling by Judge Dowd; conference with Mr. Sesler. | JCW | .3 | | |
| | **PAGE TOTAL** | | 11.8 | 1.1 | |

-28-

## APPENDIX 1—Continued

| Date | Description | | | | |
|------|-------------|---|---|---|---|
| 4/14/67 | Conference with BSC regarding Department of Health matters; conference with Messrs. Sesler and Knox; conference with attorney Velle regarding entry of judgment and status. | JCW | .8 | .50 | Paralegal |
| 4/14 | Conference with JCW; review files at SHPDA. | BSC | 1.0 | .20 | Interoffice Communication |
| 4/15 | Conference with attorney Knight regarding status and action needed; conference with Judge Dowd's law clerk; revisions to judgment entry; correspondence with Judge Dowd and attorney Landers regarding motion for summary judgment. | JCW | 1.5 | | |
| 4/15 | Conference with BSC. | BWM | .1 | .10 | Interoffice Communication |
| 4/16 | Review file at SHPDA. | BSC | .1 | .10 | Paralegal |
| 4/17 | Conference with JCW. | FAS | .2 | .20 | Interoffice Communication |
| 4/17 | Preparation of correspondence with Judge Dowd and attorney Landers; conference with BSC regarding certificate of need papers. | JCW | .3 | .20 | |
| 4/20 | Conference with clerk regarding certificate; preparation of certificate, praecipe, and checklist for issuance; conference with judge's law clerk regarding entry of judgment; conferences with Messrs. Sesler and Knox and Atty. Knight regarding certificate; review procedures regarding certificate of judgment; conferences with attorneys Budish, Staib, and Velle regarding status. | JCW | 4.5 | | |
| 4/20 | Conference with firm attorney regarding status. | TRM | .2 | .20 | Interoffice Communication |
| 4/20 | Review file at SHPDA. | BSC | .1 | .10 | Paralegal |
| 4/21 | Conference with KLW regarding certificate of judgment, etc.; conference with Atty. Knight and Mr. Sesler regarding foreclosure motion and certificate of need. | JCW | 1.0 | .30 | Interoffice Communication |
| 4/21 | Conference with JCW; travel to Akron and obtain certificate of judgment; travel to Warren to file certificate of judgment. | KLW | 8.4 | 3.00 | Travel Time |
| 4/21 | Index application. | BSC | .7 | | |
| 4/22 | Correspondence with attorney Velle regarding certificate of need and sale. | JCW | .3 | .40 | Paralegal |
| | **PAGE TOTAL** | JCW | 19.2 | 5.3 | |

APPENDIX 1—Continued

| Date | Description | | Hours | | Category |
|---|---|---|---|---|---|
| 4/22|87 | Conference with BSC. | BWM | .1 | | |
| 4/22 | Review file at SHPDA; conference with BWM. | BSC | .4 | .10 .30 | Interoffice Communication Paralegal |
| 4/23 | Conference with attorney Velie regarding CON. | JCW | .2 | | |
| 4/24 | Conference with BSC. | BWM | .1 | .10 .20 | Interoffice Communication Paralegal |
| 4/24 | Review file at SHPDA; conference with BWM. | BSC | .3 | | |
| 4/28 | Conference with Mr. Sesler and Ms. Knight regarding seizing Eversole assets; review settlement agreement; conference with attorney Budish regarding proceedings to enforce judgment. | JCW | 1.1 | | |
| 4/29 | Conferences with Mr. Sesler and attorney Velie regarding enforcement of judgment, DOH, and financing efforts. | JCW | .6 | | |
| 4/30 | Conference with Atty. Knight and Messrs. Smith and Sesler regarding status and Eversole financing failure; conference with attorney Velie. | JCW | 1.2 | | |
| 5/1 | Conference with PAP regarding Department of Health matters; review of file regarding Stein assets; conference with attorney Knight, Mr. Sesler, and attorney Budish regarding execution on judgment; conference with Messrs. Velie and Eversole regarding Department of Health; telephone conference with Ms. Overtuf of Department of Health. | JCW | 3.0 | .20 | Interoffice Communication |
| 5/1 | Conference with JCW and BWM; legal research. | PAP | 1.0 | .40 | |
| 5/1 | Conference with PAP; telephone conference with Mr. Roederer. | BWM | .3 | .20 | |
| 5/4 | Conference with attorney Knight and Mr. Sesler; review of file and procedure regarding charging order; revisions to application and charging order; preparation of garnishment. | JCW | 5.5 | | |
| 5/4 | Conference with BSC. | BWM | .1 | .10 .10 .40 | Interoffice Communication Paralegal |
| 5/4 | Conference with BWM; review file at SHPDA. | BSC | .8 | | |
| 5/5 | Travel to Warren and file garnishments and charging order; review dockets and Magdych file; investigate and visit project facility. | JCW | 7.0 | 2.5 | Travel Time |
| **PAGE TOTAL** | | | 21.7 | 4.6 | |

-30-

## APPENDIX 1—Continued

| Date | Description | | | | |
|------|-------------|---|---|---|---|
| 5/6/87 | Conference with Mr. Sesler regarding status. | PAS | .2 | | |
| 5/6 | Conference with Mr. Sesler regarding Tonn & Blank letter; conference with PAP regarding Department of Health procedure. | JCW | 1.2 | .30 | Interoffice Communication |
| 5/6 | Conference with JCW. | PAP | .3 | .30 | Interoffice Communication |
| 5/7 | Conference with Mr. Sesler regarding contract with Stein/Malone; conference with PAP and BSC. | JCW | .3 | .20 | |
| 5/7 | Conference with PAS and JCW. | PAP | .1 | .10 | Interoffice Communication |
| 5/7 | Conference with JCW. | BSC | .1 | .10 | |
| 5/8 | Conference with Messrs. Sesler, Budish, Staib, and Valle regarding status and financing efforts. | JCW | 1.0 | | |
| 5/8 | Analysis of law regarding cost overrun. | PAP | .2 | .10 | Interoffice Communication |
| 5/8 | Review of file at SHPDA; conference with JCW. | BSC | .8 | .40 | Paralegal |
| 5/11 | Conference with PAP regarding Department of Health: preparation of documents to appoint KLW as process server; conference with KLW regarding service of charging order; conference with attorney Knight, Mr. Sesler, and attorney Landers regarding action to be taken regarding Tonn & Blank judgment. | JCW | 2.2 | .50 | Interoffice Communication |
| 5/11 | Conference with JCW; telephone conference with Mr. Mariotti; review of Vern Riffe correspondence. | PAP | .9 | .10 | |
| 5/11 | Conference with BSC. | BWM | .1 | .10 | Interoffice Communication |
| 5/11 | Conference with JCW regarding trip to Warren. | KLW | .3 | .30 | Interoffice Communication |
| 5/11 | Review of file at SHPDA; conference with JCW and BWM. | BSC | 1.1 | .20 | Paralegal |
| 5/12 | Review of file and analysis of law. | PAP | .4 | .60 | |
| 5/12 | Travel to Warren and Cortland, Ohio, to serve charging order. | KLW | 7.7 | 2.50 | Travel Time |
| 5/13 | Conference with Mr. Landers regarding request to release charging order. | JCW | .5 | 3.50 | Paralegal |
| **PAGE TOTAL** | | | 17.4 | 9.3 | |

-31-

## APPENDIX 1—Continued

| Date | Description | By | Hours | Cat. Hrs | Category |
|------|-------------|-----|-------|----------|----------|
| 5/13/87 | Conference with JCW; research regarding security interests and assignments. | MLT | 1.5 | .20 | |
| 5/13 | Conference with JCW regarding return of service; correspondence with the court. | KLW | .3 | .10 | Interoffice Communication |
| 5/14 | Conference with Mr. Landers; preparation of checklist of considerations; conference with attorney Knight and Mr. Sesler. | JCW | 2.7 | | |
| 5/14 | Research regarding assignment and charging order; conference with JCW; preparation of correspondence. | MLT | 6.0 | .20 | Interoffice Communication |
| 5/14 | Conference with MLT; telephone conference with Secretary of State regarding UCC filings. | KLW | .3 | .20 | Interoffice Communication |
| 5/14 | Review of file at SHPDA; conference with JCW. | BSC | .3 | .30 | Paralegal |
| 5/15 | Conference with Mr. Landers regarding conditional release of charging order; preparation of correspondence. | JCW | 1.2 | | |
| 5/15 | Telephone conference with ODH; conference with JCW. | BWM | .6 | .10 | Interoffice Communication |
| 5/15 | Conference with MLT; telephone conferences with Trumbull County Recorder's Office and title service to order UCC searches. | KLW | .4 | .10 / .20 | Interoffice Communication / Paralegal |
| 5/16 | Correspondence with Mr. Landers regarding conditions for release of charging order. | JCW | 1.3 | | |
| 5/18 | Conference with attorney Knight and Messrs. Sesler and Landers regarding request to release charging order and surety. | JCW | .8 | | |
| 5/18 | Review of correspondence; telephone conference with attorney Gessner representing Cortland Savings & Banking. | MLT | .3 | | |
| 5/18 | Review of file at SHPDA. | BSC | .4 | .20 | Paralegal |
| 5/19 | Review documents from attorney Gessner regarding assignment of Cortland Savings & Banking; conference with MLT; conference with Mr. Budish regarding status of efforts to resolve. | JCW | 1.2 | .20 | Interoffice Communication |
| 5/20 | Review of CON bill. | PAP | .2 | | |

**PAGE TOTAL**    17.5    1.8

## APPENDIX 1—Continued

| Date | Description | | Hours | | Category |
|---|---|---|---|---|---|
| 5/20/87 | Conference with JCW; research Stein assignment to Cortland Bank. | MLT | 5.1 | .20 | Interoffice Communication |
| 5/20 | Telephone conference with title company regarding results of search; conference with MLT. | KLW | .2 | .20 | Interoffice & Paralegal |
| 5/21 | Conference with MLT regarding charging order priority; conference with attorney Knight and Mr. Landers. | JCW | .4 | .20 | Interoffice Communication |
| 5/21 | Research assignment issues. | MLT | 5.3 | | |
| 5/21 | Review of files at SHPDA. | BSC | .4 | .20 | Paralegal |
| 5/22 | Conference with Messrs. Sesler and Budish; correspondence with Mr. Budish regarding threat of sheriff executing on furniture and equipment. | JCW | .9 | | |
| 5/22 | Research assignment issues. | MLT | 2.0 | | |
| 5/26 | Conference with Mr. Sesler regarding hearing; preparation of checklist for hearing on charging order. | JCW | .6 | | |
| 5/26 | Research assignment issues; conference with JCW. | MLT | 1.1 | .10 | Interoffice Communication |
| 5/26 | Review of file at SHPDA. | BSC | .4 | .20 | Paralegal |
| 5/27 | Conference with Messrs. Sesler and Landers regarding licensing, charging order, and assignment; preparation for hearing regarding charging order and assignment; conference with MLT. | JCW | 3.0 | .20 | Interoffice Communication |
| 5/27 | Research regarding assignment of affidavit; conference with JCW; preparation of and revisions to memorandum of law. | MLT | 7.8 | .20 | Interoffice Communication |
| 5/28 | Travel to Warren for meeting with Mr. Stein and attorney; representation at hearing on charging order; Preparation and service of subpoena on Chicago Title; conference with Chicago Title representatives; preparation of order directing payment of money. | JCW | 8.5 | 2.50 | Travel Time |
| 5/28 | Revisions to memorandum of law. | MLT | .2 | | |
| 5/29 | Travel to Warren and representation at hearing; travel to Cleveland to serve charging order; conference with Mr. Newell at Chicago Title; conference with Mr. Sesler regarding status. | JCW | 8.0 | 3.50 | Travel Time |
| | **PAGE TOTAL** | | 43.9 | 7.0 | |

-33-

## APPENDIX 1—Continued

| Date | Description | | | | |
|---|---|---|---|---|---|
| 5/29/87 | Research of Oregon case relating to priority of charging order. | PNL | .5 | .20 | Paralegal |
| 5/29 | Review of file at SHPDA. | BSC | .4 | .40 | Interoffice Communication |
| 6/1 | Conference with JCW and PAP. | FAS | .4 | | |
| 6/1 | Review motion of T&B to vacate charging order; conferences with MLT regarding necessary research and charging order; conference with Messrs. Sesler and Andrews regarding licensing; conference with BSC regarding CON over-run application; research and memorandum regarding charging order. | JCW | 3.2 | .40 | |
| 6/1 | Conference with FAS and JCW. | PAP | .2 | .20 | Interoffice Communication |
| 6/1 | Conference with JCW; review of file; legal research regarding motion to vacate. | MLT | 8.2 | .20 | |
| 6/2 | Preparation of charging order and brief; conferences with Messrs. Budish and Staib regarding briefing schedule and licensing; conference with MLT regarding brief. | JCW | 4.8 | .30 | Interoffice Communication |
| 6/2 | Conference with JCW; preparation of memorandum contra motion to vacate charging order. | MLT | 10.2 | .30 | |
| 6/2 | Review file at SHPDA. | BSC | .8 | .40 | Paralegal |
| 6/3 | Conference with attorney Knight regarding status; conference with Judge Shaker regarding order; preparation of order. | JCW | .7 | .40 | Interoffice Communication |
| 6/3 | Conference with BSC. | BWM | .2 | | |
| 6/3 | Conference with BWM. | BSC | .4 | | |
| 6/4 | Conference with Mr. Sesler regarding licensing; conference with PAP regarding CON and related matters; conferences with attorneys Budish and Staib regarding status; review Tonn & Blank motion to determine priority and brief; conference with MLT. | JCW | 2.5 | .80 | |
| 6/4 | Conference with JCW. | PAP | .6 | .60 | Interoffice Communication |
| 6/4 | Research regarding similar cases; review of pleadings; conference with JCW. | MLT | 3.2 | .20 | Interoffice Communication |
| 6/5 | Conference with JCW regarding strategy. | FAS | .5 | .50 | Interoffice Communication |
| | **PAGE TOTAL** | | 36.8 | 4.9 | |

-14-

## APPENDIX 1—Continued

| Date | Description | Init. | Hours | Value | Note |
|---|---|---|---|---|---|
| 6/5/87 | Review Tonn & Blank's creditors bill; conference with MLT regarding briefing of charging order issue; conference with Mr. Sesler regarding CON and federal certification; conferences with Messrs. Budish and Gessman; correspondence with Mr. Budish. | JCW | 2.5 | .20 | |
| 6/5 | Research regarding cases cited in brief of Tonn & Blank; conference with JCW; preparation of reply to Tonn & Blank brief; preparation of memorandum of law. | MLT | 8.1 | .20 | Interoffice Communication |
| 6/5 | Conference with JCW; telephone conference with ODH. | BWM | .5 | .20 | |
| 6/5 | Review file at SHPDA. | BSC | .4 | .20 | Paralegal |
| 6/7 | Preparation of final memorandum regarding charging order. | JCW | .5 | | |
| 6/7 | Revisions to memorandum of law. | MLT | 4.5 | | |
| 6/8 | Meeting with trustee officials regarding charging order. | FAS | .8 | | |
| 6/8 | Conference with Messrs. Sesler, Knox, and Smith regarding status and alternatives; review of Judge Shaker's ruling; preparation of checklist for meeting; conference with attorney Budish regarding ruling; conference with Mr. Sesler regarding ruling and conversation with Mr. Stein. | JCW | 1.8 | | |
| 6/8 | Review of entry and order. | MLT | .3 | | |
| 6/8 | Telephone conference with Ms. Long; conference with JCW. | BWM | .3 | .10 | Interoffice Communication |
| 6/9 | Research regarding supersedeas bonds; conference with JCW. | MLT | 1.0 | .20 | Interoffice Communication |
| 6/9 | Review of file at SHPDA. | BSC | .4 | .20 | Paralegal |
| 6/10 | Review of indenture; conference with JCW. | FAS | .9 | .20 | |
| 6/10 | Conference with MLT regarding necessity of bond for stay; conference with PAS regarding handling of funds under indenture; review mortgage, T&B notice of appeal, and motion for stay; research regarding lending money from judgment; conference with BWM regarding licensing and receiver; conference with Mr. Sesler. | JCW | 2.8 | .60 | Interoffice Communication |
| **PAGE TOTAL** | | | 24.8 | 2.1 | |

## APPENDIX 1—Continued

| Date | Description | | | | Notes |
|------|-------------|----|-----|------|-------|
| 6/10/87 | Research regarding stay issue and supersedeas bonds; conference with JCW. | MLT | 6.8 | .30 | Interoffice Communication |
| 6/11 | Conference with MLT regarding appellate procedure and alternative course of action; revisions to motion; conference with PAP regarding value of home and possibility of receiver; conferences with Messrs. Staib and Budish regarding stay. | JCW | 1.8 | .80 | — |
| 6/11 | Conference with JCW. | PAP | .6 | .60 | Interoffice Communication |
| 6/11 | Research regarding stay issue and appeal issues; conference with JCW; preparation of motion and praecipe; telephone conference with court official. | MLT | 3.8 | .20 | |
| 6/12 | Conference with JCW regarding status. | FAS | .3 | .30 | |
| 6/12 | Conference with attorney Staib regarding entry of stay; conference with Mr. Sesler regarding investment of monies; conference with FAS regarding status; review draft entry of stay. | JCW | 2.0 | .30 | Interoffice Communication |
| 6/13 | Review motion of Tonn & Blank to stay filed in Court of Appeals. | JCW | .5 | | |
| 6/15 | Review issues of priority between charging order and creditors; conference with TEC regarding research assignment. | JCW | 1.9 | .30 | |
| 6/15 | Conference with JCW and BWM. | PAP | .2 | .20 | |
| 6/15 | Conference with PAP. | BWM | .1 | .10 | |
| 6/15 | Review assignment to TEC; conference with firm attorney regarding appeal and stay. | MLT | .6 | .60 | Interoffice Communication |
| 6/15 | Review file at SHPDA. | BSC | .4 | .20 | Paralegal |
| 6/16 | Review Cortland's notice of appeal; conferences with Ms. Knight and Messrs. Sesler, Smith, and Landers regarding status; revise order for stay; conference with attorney Staib. | JCW | 1.3 | | |
| 6/16 | Legal research. | TEC | 2.5 | 2.50 | No description of research |
| 6/17 | Conferences with Messrs. Sesler, Landis, and Budish regarding status. | JCW | .5 | | |
| 6/17 | Review Cortland appeal. | MLT | .1 | | |
| | **PAGE TOTAL** | | 23.4 | 6.4 | |

## APPENDIX 1—Continued

**POST PETITION**

| Date | Description | | | | |
|------|-------------|----|-----|------|---|
| 6/18/67 | Conference with TEC regarding Tonn & Blank's creditors bill. | JCW | .5 | .5 | Interoffice Communication |
| 6/18 | Conference with attorney. | TEC | 1.0 | 1.00 | No description of work |
| 6/19 | Conferences with attorneys Budish and Lucci regarding Chapter 11 proceedings; revisions to Magdych proof of claim. | JCW | .5 | | |
| 6/19 | Preparation of and revisions to pleadings. | MLT | 2.1 | | |
| 6/19 | Research and preparation of memorandum. | TEC | 1.0 | 1.0 | No description of work |
| 6/19 | Conference with SHPDA consultant; review files at SHPDA office. | BSC | .7. | .40 | Paralegal |
| 6/22 | Review letter from attorney Lucci; conference with Mr. Sesler regarding bankruptcy filings. | JCW | .3 | | |
| 6/22 | Conference with BSC. | BWH | .1 | | |
| 6/22 | Conference with JCW; telephone conference with Bankruptcy Court in Youngstown regarding schedules; preparation of request to address notices in Stein and Gillette bankruptcies. | KLW | .3 | | |
| 6/22 | Review of files at SHPDA. | BSC | .2 | | |
| 6/23 | Conference with Mr. Sesler regarding status and expression of interest from Eversole; conference with attorney Velie. | JCW | .6 | | |
| 6/23 | Legal research. | TEC | 1.0 | | |
| 6/24 | Conference with JCW. | MLT | .1 | | |
| 6/25 | Conference with JCW. | MLT | .4 | | |
| 6/25 | Review file at SHPDA. | BSC | .4 | | |
| 6/26 | Preparation of and revisions to memorandum. | MLT | 2.4 | | |
| 6/29 | Preparation of course of action to respond to Chapter 11 filings; conferences with attorneys Budish and Staib. | JCW | 2.5 | | |
| 6/29 | Review of files at SHPDA. | BSC | .8 | | |
| 6/30 | Conference with Mr. Sesler regarding security situation; conference with PAP regarding new CON law and bankruptcies; research regarding alternatives. | JCW | 3.4 | | |
| -37- | **PAGE TOTAL** | | 5.8 | 2.9 | |
| | **GRAND TOTALS** | | 979.1 | 193.3 | = 785.8 |